716 A.2d 230

## NEW YORK BRONZE POWDER COMPANY, INC.

v.

## BENJAMIN ACQUISITION CORPORATION.

No. 6, Sept. Term, 1997.

Court of Appeals of Maryland.

Aug. 25, 1998.

Robert P. Scanlon (Anderson & Quinn, on brief), Rockville, for Petitioner.

Lloyd N. Fantroy (Foley & Lardner, on brief), Washington, DC; Steven B. Chameides, of counsel, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW and RAKER, JJ., and MARVIN H. SMITH and ROBERT L. KARWACKI, Judges (retired), Specially Assigned.

MARVIN H. SMITH, Judge (retired), Specially Assigned.

This case presents the problem of whether a provision in a contract is a condition or a promise or both. The Court of Special Appeals in an unreported opinion reversed a trial court judgment and construed as a condition precedent a provision in a non-negotiable note/contract requiring surrender of the note in order to receive payment.

The facts relevant to this decision may be briefly stated.

New York Bronze Powder Company, Inc. (New York Bronze) entered into an agreement dated March 15, 1990, with Benjamin Acquisition Corporation (Benjamin) under which Benjamin agreed to purchase from New York Bronze the assets of a business then known as Benjamin F. Rich Company (Rich) for $4.5 million, together with the assumption of certain of Rich's liabilities. Closing was to take place on April 30, 1990. Shortly prior to the closing, Benjamin expressed its concerns to New York Bronze over the valuation of certain assets. The matter was resolved by an April 30, 1990 modification of the purchase agreement (Amendment No. 1). Under Amendment No. 1 $350,000 of the $4.5 million purchase price was deferred, and Benjamin executed a non-negotiable note to New York Bronze for $350,000. Under Section 3 of Amendment No. 1 Benjamin undertook, at its expense, to have prepared a balance sheet of Rich accompanied by the opinion of a specifically named accounting firm, and Benjamin promised to use its best efforts to cause that audited balance sheet to be delivered to New York Bronze no later than June 14, 1990. To the extent that the audited balance sheet reflected a net worth of Rich that was less than $4.5 million, Benjamin was entitled under Section 3 of the note to a dollar for dollar credit against the $350,000 deferred purchase price.

The note was payable in two installments, the first due on the tenth business day after delivery of the audited balance sheet, and the second due on July 30, 1991. Thus, assuming that the audited balance sheet was prepared within the contemplated time and that it reflected Rich's net worth to be $4.5 million or more, $150,000 of the deferred purchase price would have been due and payable on or about June 28, 1990, and the balance of $200,000 would have been due and payable on July 30, 1991.

As matters unfolded following the April 30, 1990 closing under the modified asset purchase agreement, the accounting firm specified in Amendment No. 1 never opined on the audited balance sheet, and apparently never completed its audit.

Benjamin never made or tendered any cash payment on the note. In October 1993 New York Bronze sued Benjamin in the Circuit Court for Montgomery County alleging non-payment of the note and breach of the modified asset purchase agreement. After a bench trial the court entered judgment for $350,000 in favor of New York Bronze.

Benjamin appealed to the Court of Special Appeals, raising three issues, but that court found it necessary to address only one. That issue is whether the portion of Section 4.2 of the note, italicized below, should be construed as a condition precedent to payment.[1] That section provides:

4.2 <u>Payments.</u> Payments of any portion of the principal of this Note shall be made by check drawn on a United States commercial bank and shall be mailed by registered mail, return receipt requested, on or prior to the date on which such payment is due, to the Noteholder at the address set forth in the Purchase Agreement. If the date on which any payment hereunder is due is not a Business Day, then such payment shall be due on the next succeeding Business Day. *The Noteholder shall be required to surrender this Note for cancellation upon the maturity or prepayment in full of this Note in order to receive payment.*

(Emphasis added). Section 4.4 of the note provides that it "SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK."

The Court of Special Appeals held that, under New York law, the italicized language created a condition, the non-occurrence of which extinguished Benjamin's obligation to pay

---

1. The first question presented in Benjamin's brief to the Court of Special Appeals asked

[w]hether the trial Court erred by awarding a judgment to the plaintiff upon a promissory note, which note had been transferred by plaintiff and could not be presented by plaintiff for payment, without requiring plaintiff to provide for the protection of defendant from a subsequent claim by the third-party holder of the note.

Court of Special Appeals, No. 52, September Term, 1996, Appellant's Brief at 3.

the $350,000 or any part thereof. New York Bronze then petitioned this Court for the writ of certiorari, which was granted.

The factual foundation for Benjamin's position that the "condition" was not fulfilled lies in the testimony of New York Bronze's chief financial officer. When New York Bronze attempted to introduce *not* the note but *a copy* of the note, the following colloquy took place:

Q. [Counsel for New York Bronze]: Can you identify Exhibit No. 3?

A. This would be the Benjamin Acquisition subordinated promissory note [due] July 30, 1991 for $350,000.

(The document referred to was marked for identification as Plaintiff's Exhibit 3.)

. . . .

Q. Was anything paid on that note?

A. No, nothing has been received.

Q. Is that a true and accurate copy of the original?

A. It appears to be, yes.

[Counsel for New York Bronze]: Your Honor, I would move Exhibit No. 3 into evidence[.]

The Court: Any objection?

[Counsel for Benjamin]: Yes, Your Honor. *I have a bit of a problem with this exhibit to the extent Plaintiff is suing on a note and exhibiting the copy as opposed to the original.* It causes me a great deal of concern.

The Court: Okay. Can you establish foundation as to the location of the original?

. . . .

Q. [Counsel for New York Bronze]: Do you have the original note?

A. No, I don't.

Q. Have you sold the original note?

A. No, I have not.

Q. Has it been encumbered by anyone? Have you encumbered the original note?

A. I just want to say where the original note is.

Q. Where is it?

A. Because I am not sure about the word encumbered. Perpetual Savings Bank was the lender at the time. They had an interest in all the assets. They kept the original documents.

Q. Is that a true and accurate copy of the original note?

A. Yes.

[Counsel for New York Bronze]: I would move No. 3 into evidence.

The Court: Any further objection?

[Counsel for Benjamin]: Yes, Your Honor. That still raises a question. *Now they are suing us on a note they are not even holding.*

The Court: Well, I will receive this over objection. I think a foundation has been laid.

(Emphasis added).

On the second day of trial, Benjamin again demanded production of the original note. Benjamin, however, did not argue that the original document had to be produced pursuant to Section 4.2 of the note. Instead, its attorney stated, "[W]e don't know whether it was assigned." The trial court indicated that Benjamin seemed to be arguing the issue of capacity to sue, or of real party in interest. Benjamin did not elaborate further, so that it never specifically argued that the last sentence of Section 4.2 of the note created a condition precedent to any payment. The circuit court did not alter its ruling admitting the copy.

■ In this Court New York Bronze argues that the question on which the Court of Special Appeals decided the case was not tried and decided by the circuit court and should have been excluded from consideration on appeal for lack of preservation. The short answer to this contention is that, assuming that Benjamin did not preserve the issue in the circuit court,

the Court of Special Appeals nevertheless has discretion under Maryland Rule 8–131(a) to consider the question.

 The Court of Special Appeals held that New York Bronze was not entitled to the principal amount of the note, or any part thereof, because it had not surrendered the original note to Benjamin. In reaching that result, the Court of Special Appeals reasoned:

> New York and Maryland law are congruent on the point that words in a contract (or note) are to be given their ordinary meaning. *Slatt v. Slatt,* [64 N.Y.2d 966, 488 N.Y.S.2d 645] 477 N.E.2d 1099, 1100, *motion for reargument denied,* [65 N.Y.2d 785, 492 N.Y.S.2d 1026] 482 N.E.2d 568 (N.Y.1985); *United States Building Maintenance Co., Inc. v. State,* [65 A.D.2d 916] 410 N.Y.S.2d 466 (N.Y.1980); *General Motors Acceptance v. Daniels,* 303 Md. 254 [492 A.2d 1306] (1985). The New York courts have defined a condition precedent as "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,* [86 N.Y.2d 685, 636 N.Y.S.2d 734] 660 N.E.2d 415, 418 (N.Y.1995); *Merritt Hill Vineyards v. Windy Hgts. Vineyard, Inc.,* [61 N.Y.2d 106, 472 N.Y.S.2d 592] 460 N.E.2d 1077, 1081–82 (N.Y.1984).[2]

The language in § 4.2 of the note clearly fits that definition. The noteholder is required to surrender the note for

---

2. This squares with Maryland law. This Court has defined a condition precedent as " 'a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises.' " *Chirichella v. Erwin,* 270 Md. 178, 182, 310 A.2d 555, 557 (1973) (quoting 17 Am.Jur.2d, *Contracts,* § 320). While "no particular form of words is necessary in order to create an express condition, such words and phrases as 'if' and 'provided that,' are commonly used to indicate that performance has expressly been made conditional, as have the words 'when,' 'after,' 'as soon as,' or 'subject to.' " *Id.* (citations omitted). The determination of whether a provision in a contract constitutes a condition precedent is a question of "construction dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation." *Id.*

cancellation "in order to receive payment." Unquestionably, that requirement does qualify the duty to pay. *See Gilpin v. Savage*, 94 N.E. 656 (N.Y.1911) (requirement of presentment of negotiable instrument construed as condition precedent); *Laurel Race Course v. Regal Constr.*, 274 Md. 142 [333 A.2d 319] (1975) (where payment under contract due only upon issuance of certificate by architect, production of certificate is condition precedent to liability).[3]

■ The dominant element in this case is that the note is non-negotiable.[4] The form of the note was an exhibit to Amendment No. 1 to the asset purchase agreement, and the note's provisions concerning set off implement the provisions of Amendment No. 1 concerning the audit. The asset pur-

---

3. A fallback contention by New York Bronze is that the Court of Special Appeals, even under its own rationale, should have affirmed the judgment to the extent of $150,000. New York Bronze points out that the last sentence of Section 4.2 of the note relates only to payment at maturity or to a prepayment in full. Consequently, the last sentence cannot have been intended to apply to the first installment. The Court of Special Appeals rejected this argument, reasoning in effect that, because Benjamin had paid nothing on the note, the last sentence of Section 4.2 applied to the entire $350,000 face amount of the note. That analysis, in our view, is illogical. The trial court had held that New York Bronze was entitled to the entire $350,000, a holding which, of necessity, included entitlement to $150,000 on the first payment date. Without considering whether the circuit court erred in finding in favor of New York Bronze on the other questions presented and without concluding that New York Bronze was not entitled to 100% of the face amount of the note, the Court of Special Appeals could not apply the "condition" to the first installment that was contractually due before maturity of the balance. The Court of Special Appeals in effect held that Benjamin, by breaching the contract (as the circuit court found), got the benefit of the "condition" as to the entire deferred purchase price.

4. Benjamin does not contend that the note was a negotiable instrument. It did not contain "an unconditional promise or order to pay a sum certain in money," N.Y.U.C.C. § 3–104(1)(b) (McKinney 1991), and it was not "payable to order or to bearer." *Id.* § 3–104(1)(d). In addition, the note was introduced by a legend stating that it "may not be transferred except in compliance with, or pursuant to an exemption from, applicable securities laws." Section 4.1 of the note repeats the same warning and adds the provision that "[a]ny transferee of this Note shall take this Note subject to the terms hereof, including, without limitation, the provisions relating to subordination and set off."

chase agreement, as amended, is one integrated contract that includes the note. Under these circumstances the controlling issue is whether the last sentence of Section 4.2 of the note is to be construed as a promise on the part of New York Bronze to surrender the note for cancellation, for an unsubstantial breach of which Benjamin would not be excused from performance, or whether the last sentence is a condition precedent to enforcement of Benjamin's promise to pay.

The most recent decision of the Court of Appeals of New York dealing with conditions in contracts is *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 636 N.Y.S.2d 734, 660 N.E.2d 415 (1995). In that case there was an agreement concerning a proposed sublease. *Oppenheimer*, 636 N.Y.S.2d at 735, 660 N.E.2d at 416. The sublessee had furnished the sublessor plans for construction of a telephone communications linkage system on the premises, and the sublessor obligated itself to obtain the underlying landlord's written consent to that work and to deliver that written consent by a specified date. *Id.* at 735–36, 636 N.Y.S.2d 734, 660 N.E.2d at 416–17. On the specified date the sublessor telephoned the sublessee, advising that the underlying landlord had consented. *Id.* at 736, 636 N.Y.S.2d 734, 660 N.E.2d at 417. The sublessee refused to sign the proposed sublease. *Id.* The issue before the Court of Appeals of New York was whether the requirement for the sublessor to obtain written consent was a covenant, in which event non-performance would be subject to the doctrine of substantial performance, or whether that doctrine had no application because the provision was a condition. *Id.* at 735, 636 N.Y.S.2d 734, 660 N.E.2d at 416.

The agreement in *Oppenheimer* stated that if the sublessee "had not received the prime landlord's written consent by the agreed date, both the agreement and the sublease were to be deemed 'null and void and of no further force and effect,' and neither party was to have 'any rights against nor obligations to the other.'" *Id.* at 736, 636 N.Y.S.2d 734, 660 N.E.2d at 417. Another provision of the agreement stated that "the parties 'agree not to execute and exchange the Sublease unless

and until ... the conditions set forth in [the paragraph requiring, *inter alia*, written consent] are timely satisfied.'" *Id.* The court held that this language created a condition. *Id.* at 737, 636 N.Y.S.2d 734, 660 N.E.2d at 418.

The court in *Oppenheimer* gave guidance for interpreting whether a provision is a condition:

> In determining whether a particular agreement makes an event a condition courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition. This interpretive preference is especially strong when a finding of express condition would increase the risk of forfeiture by the obligee (see, Restatement [Second] of Contracts § 227[1]).

*Id.*[5]

Other New York case law also indicates that the courts of that state employ a strict interpretation as to the type of language that creates a condition precedent. In *West–Fair Electric Contractors v. Aetna Casualty & Surety Co.*, 87 N.Y.2d 148, 638 N.Y.S.2d 394, 661 N.E.2d 967 (1995), the Court of Appeals of New York examined whether a pay-when-paid provision of a contract between a general contractor and a subcontractor constituted a condition precedent or whether such a provision "merely fixed a time for payment, rather than placing the risk of nonpayment by the owner on the subcontractor." *West–Fair*, 638 N.Y.S.2d at 396, 661 N.E.2d at 969. The contract provision stated: " 'IT IS SPECIFICALLY UNDERSTOOD AND AGREED THAT THE PAYMENT TO THE TRADE CONTRACTOR [plaintiff] IS DEPENDENT,

---

**5.** Restatement (Second) of Contracts § 227(1) (1981), referred to by the *Oppenheimer* court, reads:

> In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk.

In *Oppenheimer*, whether the condition would occur was in the control of the underlying landlord. But, the court further held that the loss of the prospective sublease by failure of the condition was not a forfeiture. *Oppenheimer*, 636 N.Y.S.2d at 739, 660 N.E.2d at 420.

AS A CONDITION PRECEDENT, UPON THE CON-
STRUCTION MANAGER [the general contractor] RECEIV-
ING CONTRACT PAYMENTS, INCLUDING RETAINER
FROM THE OWNER.'" *Id.* Finding that the language was
a condition precedent, the court noted that in *Schuler–Haas
Electric Co. v. Aetna Casualty & Surety Co.*, 40 N.Y.2d 883,
389 N.Y.S.2d 348, 357 N.E.2d 1003 (1976) (mem.), it had held
that a pay-when-paid provision "fixed a time for payment
because the document containing the provision lacked express
language imposing a condition on the general contractor's
legal responsibility to pay." *West–Fair*, 638 N.Y.S.2d at 397,
661 N.E.2d at 970. Holding that the provision in *West–Fair*
was different from the provision in *Schuler–Haas* and that the
*West–Fair* provision constituted a condition precedent, the
court stated:

> In contrast [to the pay-when-paid clause in *Schuler–Haas* ],
> the face of the subcontract here explicitly makes payment
> from the owner to the general contractor a "condition
> precedent" to any payment to plaintiff. Since the unambig-
> uous language of section 3.2 places the risk of the owner's
> inability or failure to pay the general contractor squarely
> upon plaintiff, the pay-when-paid provision here cannot be
> construed as a time for payment clause.

*Id.*

*Manning v. Michaels*, 149 A.D.2d 897, 540 N.Y.S.2d 583
(1989), involved the purchase of real property by the plaintiff
from the defendants. *Id.* at 897, 540 N.Y.S.2d at 583. The
contract of sale contained a rider stating, " 'By signing this
Rider, Seller's attorney has agreed to act as escrow agent as
provided above.'" *Id.* at 897, 540 N.Y.S.2d at 583–84. The
plaintiff was unable to proceed to closing, and her attorney
demanded the return of the deposit. *Id.* at 897–98, 540
N.Y.S.2d at 584. The plaintiff then commenced an action
against the defendants and the defendants' attorney for the
return of the deposit. *Id.* at 898, 540 N.Y.S.2d at 584. On
appeal, the plaintiff asserted the defendants' attorney's sign-
ing the contract constituted a condition precedent to the
formation of a valid escrow agreement. *Id.* The court disa-

greed with this contention, noting that "[n]owhere did the offer indicate that [the sellers' attorney's] signature on the rider was required for a valid acceptance by the sellers." *Id.* at 898–99, 540 N.Y.S.2d at 584; *see also Rom Terminals, Ltd. v. Scallop Corp.*, 141 A.D.2d 358, 529 N.Y.S.2d 304 (1988) (mem.) (repair clause in a contract regarding the repair of a pier was not a condition precedent to closing), *appeal denied by* 73 N.Y.2d 707, 539 N.Y.S.2d 300, 536 N.E.2d 629 (1989).

In addition to illustrating language that undoubtedly creates a condition, *Oppenheimer* evidences that the Court of Appeals of New York will look to Restatement (Second) of Contracts § 227 (1981) (Restatement) for the preferred interpretation of language argued to create a condition, as well as to Restatement § 229, dealing with excusing the non-occurrence of a condition. *See Oppenheimer*, 636 N.Y.S.2d at 737, 660 N.E.2d at 418; *see also Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 113, 472 N.Y.S.2d 592, 597, 460 N.E.2d 1077, 1082 (1984) (citing to Restatement § 225, "Effects of the Non–Occurrence of a Condition"). Here, the applicable section of the Restatement is § 227(2). In the language of that subsection, the duty to be performed is Benjamin's duty to pay the note, so that Benjamin is the "obligor;" New York Bronze is the "obligee;" and the asserted condition is the surrender of the note. Benjamin's position necessarily is that, as of the time of contract formation, surrender of the note was an event within the control of New York Bronze.[6]

Where the above recited factors are present, the preferred interpretation is set forth in Restatement § 227(2), which reads:

---

**6.** The testimony of New York Bronze's chief financial officer, quoted above, is that the note formed part of the security for a loan from Perpetual Savings Bank to New York Bronze. Counsel for New York Bronze states, without reference to evidence in the record extract, or indeed, in the original record, that Perpetual became insolvent, was "taken over" by the Resolution Trust Corporation which "has been replaced" by the FDIC and that "some of Perpetual's assets have been purchased by Crestar Financial Corp."

Unless the contract is of a type under which only one party generally undertakes duties, when it is doubtful whether

(a) a duty is imposed on an obligee that an event occur, or

(b) the event is made a condition of the obligor's duty, or

(c) the event is made a condition of the obligor's duty and a duty is imposed on the obligee that the event occur, the first interpretation is preferred if the event is within the obligee's control.[7]

Comment *d* states the rationale for the preferred interpretation as follows:

The rule in Subsection (2) states a preference for an interpretation that merely imposes a duty on the obligee to do the act and does not make the doing of the act a condition of the obligor's duty. The preferred interpretation avoids the harsh results that might otherwise result from the non-occurrence of a condition and still gives adequate protection to the obligor under the rules ... relating to performances to be exchanged under an exchange of promises. Under those rules ... the obligee's failure to perform his duty has, if it is material, the effect of the non-occurrence of a condition of the obligor's duty. Unless the agreement makes it clear that the event is required as a condition, it is fairer to apply these more flexible rules. The obligor will, in any case, have a remedy for breach.

Turning to the interpretation of the last sentence of Section 4.2 of the note we conclude, for the reasons hereinafter set forth, that it is "doubtful" that the parties intended to create a condition. Benjamin's interpretation rests entirely on the language "in order to receive payment." Neither in the context of the contract as a whole, nor within the terms themselves, is the creation of a condition so clear that it

---

7. Section 227(2) was applied by this Court in *Beckenheimer's Inc. v. Alameda Assocs. Ltd. Partnership,* 327 Md. 536, 554–55, 611 A.2d 105, 113–14 (1992).

overcomes the preference for interpretation of the language as a covenant.

The introductory paragraph of the non-negotiable note contains the promise to pay $350,000 and expresses that that promise is "[s]ubject to Sections 2 and 3 below." The former deals with subordination and the latter is the agreement concerning set offs. Had the parties intended the promise to be subject to a condition found in Section 4.2, careful drafting would have included Section 4.2 in the introduction of the note.

Section 4.2 of the note specifies how and when payments "shall be made ... and shall be mailed." This is the language of covenants. No one could seriously maintain that, if Benjamin, in some immaterial fashion, did not comply with the provisions describing the payment checks and their mailing, then a payment received by New York Bronze could be kept by it without crediting the payment against the obligation. The principal clause of the last sentence in Section 4.2 ("The Noteholder shall be required to surrender this Note for cancellation ....") similarly is the language of covenant. Thus, under Benjamin's position, the language, "in order to receive payment," must produce a substantially different legal result than do the other provisions of Section 4.2.

Under the New York cases, it would seem that more explicit language than that used is required in order to achieve that result. For example, the interpretation would be much more clear if the critical clause of the last sentence of Section 4.2 read: "and upon failure to surrender this Note [Benjamin's] obligation to pay any outstanding balance will terminate," or "be extinguished." Instead, the note uses the language, "in order to receive payment." The primary meaning of the verb "to receive" is "to take possession or delivery of," as of a gift or of a letter. Webster's Third New International Dictionary 1984 (1976). In the context of the last sentence of Section 4.2, "receive" carries a passive connotation as to the role of New York Bronze while the active role would be that of Benjamin in tendering payment in full of any outstanding balance. Interpreting Section 4.2 as promises to exchange perfor-

mances is a far cry from interpreting it to provide that the failure to surrender the note causes New York Bronze to lose all rights to take an active role and enforce collection on the note through legal proceedings.

The obvious purpose of the last sentence of Section 4.2 is to protect Benjamin from the risk that the note will fall into the hands of a third party who will in some way force Benjamin to pay twice. If the critical language is interpreted as part of a covenant by New York Bronze, then Benjamin theoretically had a number of options to remedy the breach. Benjamin could take the position that the breach was substantial, thus excusing Benjamin from performance, but that result is not the situation here, as we explain below. Benjamin could demand and possibly obtain from New York Bronze proof satisfactory to Benjamin that Benjamin would not be required to pay twice. Benjamin could claim as damages for the breach the cost of a bond protecting it against double payment. Although the note is non-interest bearing, Benjamin could have utilized the breach by New York Bronze to oppose a claim for the discretionary allowance of interest on any unpaid and overdue balance on the note for the period from maturity until judgment. Further, if after having paid New York Bronze in full a third party claimed against Benjamin on the note, Benjamin could obtain damages from New York Bronze measured by the cost of defending the claim of the third party and demonstrating that payment had been made in full.

Whatever the effect of the critical language might be in an agreement involving a negotiable note, Benjamin's risk of being required to pay twice is *de minimis* in the instant matter because the note is non-negotiable. If we assume that Benjamin paid the full $350,000 without a surrender of the note, an assignee of New York Bronze could not be a holder in due course. That assignee would take the note subject to the defense of payment by Benjamin to New York Bronze.[8]

---

8. Benjamin's response to this last analysis relies on New York Bronze's extra-record statement that Perpetual Savings Bank was "taken over"

Under these circumstances it is unlikely that the parties intended to create a condition entitling Benjamin to keep up to $200,000 of assets without paying the agreed consideration. Thus, we apply the preferred construction and hold that the last sentence of Section 4.2 of the note creates a covenant or contractual duty on the part of New York Bronze to surrender the note.

There are other issues which were presented to the Court of Special Appeals that have not been passed upon by an appellate court because the Court of Special Appeals saw no need to address them once it determined that Section 4.2 of the note controlled the matter. Hence, we shall remand this case to the Court of Special Appeals for consideration of the points presented.

*JUDGMENT REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE PAID BY THE RESPONDENT, BENJAMIN ACQUISITION CORPORATION. COSTS IN THE COURT OF SPECIAL APPEALS TO ABIDE THE RESULT.*

---

by federal authorities, see note 6, *supra*, and Benjamin asserts that payment would not be a defense to a claim for collection on the note in the hands of a federal agency. Benjamin cites no authority whatsoever for this contention, and we give it no weight.