885 A.2d 381

**RICHARD F. KLINE, INC. et al.**

v.

**SHOOK EXCAVATING & HAULING, INC.**

**No. 592, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Oct. 31, 2005.

Scott D. Miller (Weinberg & Miller, LLC, on brief), Frederick, for appellant.

William R. Nicklas, Jr. (Nicklas & Sinton, PA, on brief), Frederick, for appellee.

Panel DAVIS, DEBORAH S. EYLER, ROBERT L. KARWACKI, retired, (specially assigned), JJ.

DAVIS, J.

Richard F. Kline, Inc., et al., appellant, appeals from a judgment entered on April 29, 2004, by the Circuit Court for Frederick County, in favor of appellee, Shook Excavating & Hauling, Inc, against appellant in the amount of $389,938.11 for breach of contract. The court had previously, in denying appellant's motion for summary judgment, determined that Article XIX of the subcontract entered into by appellant and appellee is not a "paid if paid" condition precedent, relieving appellant from any obligation to pay appellee.

Appellant presents four questions for our review, which we rephrase, in part, as follows.

1. Did the trial court err as a matter of law in denying appellant's motion for summary judgment and finding that article XIX of the subcontract was not a "paid if paid" condition precedent, relieving appellant from any obligation to pay appellee?

2. Did the trial court err as a matter of law in rendering a judgment that was outside the cause of action pled in the amended complaint?

3. Did the trial court err as a matter of law in finding that the subcontract between appellant and appellee was modified orally?

4. Did the trial court err as a matter of law in finding article XIX of the subcontract was not a liquidated damages clause?

We answer these questions in the negative. Therefore, we affirm the decision of the circuit court.

## FACTUAL BACKGROUND

Richard F. Kline, Inc., et al., appellant, entered into a contract (hereinafter, "general contract") with The City of Frederick (hereinafter, "City") on September 21, 1993, to provide services related to the excavation and construction of Phase IIIB of the Carroll Creek Flood Control Project.[1] Appellant entered into a subcontract with appellee to provide excavation, grading and other related services in support of appellant's contract with the City on August 31, 1993 (hereinafter, "subcontract"). The project site, where the excavation, grading and construction were to take place, contained hazardous materials in the form of underground storage tanks (hereinafter, "USTs") and contaminated soil. It is the payment associated with the hauling, stockpiling and handling of the contaminated soil that is ultimately the issue in this appeal.

During the project, the engineer and project manager for the City was Rummel, Klepper & Kahl (hereinafter "R.K. & K.") Later, R.K. & K. Environment was hired to be on site to assess the condition of the soil and storage tanks on a daily basis. The Maryland Department of the Environment (hereinafter, "MDE"), has regulatory authority over the excavation and disposal of storage tanks and contaminated soil for the State of Maryland. The City and R.K. & K. deferred to the determinations of MDE relating to the excavation and disposal of storage tanks and the disposition of soils believed to be contaminated.

The subcontract incorporated by reference all of the terms and conditions of the general contract. The general contract contained a contingent item, Item 220, that dealt with removal of contaminated soil. Initially, it was appellant that was responsible for the handling of contaminated soil during the project. The subcontract did not contain any provisions for handling contaminated soil and appellee was only responsible for the removal of USTs on the site.

---

1. The statement of facts included in appellant's brief states the contract between itself and the City was entered into on September 2, 1993, contrary to the stipulations entered into by the parties at trial.

Beginning on November 17, 1993, storage tanks were excavated and removed from the job site. As the USTs were removed, the soil was segregated pursuant to the directions of MDE and R.K. & K. Although not a part of the subcontract between appellant and appellee, appellee hauled the soil to the site as directed by appellant. Appellant and appellee amended the subcontract on December 7, 1993, to add "item 220," the contingent pay item, making appellee responsible for handling contaminated soils on the site. Handling contaminated soil on the site involved moving the soil from the area around the USTs and hauling the soil to another location on the site where it could be mixed in order to expose it to the air. The mixing of the soil was to reduce the level of contamination in the soil to an acceptable level. Once the contamination level in the soil was reduced, it was then to be used in backfilling on the project.

By letter dated August 11, 1994, the City issued a directive for the handling of soils on the project believed to be contaminated. In that letter, addressed to appellant, the City stated that appellant was to be compensated on a time and materials basis after receiving approval, from R.K. & K., to treat the soil as contaminated. By letter dated March 17, 1995, the City directed that appellant was to cease work on the contaminated soil stockpile because MDE, through its testing, had determined that the soils were not contaminated.

Both parties continued to believe the soils were contaminated, despite MDEs determination that the soils were not. William Shook testified on behalf of appellee that sometimes the smell of the soil on the site made him, as well as members of his crew, sick. He also testified that the soil appeared oily, had an odor of petroleum, and contaminants had caused him to develop a rash on his arm. Following receipt of the March 17, 1995 letter, appellant had the soil on the site tested by an independent laboratory to determine the level of contamination. The testing confirmed that the soil on the project site contained higher amounts of contaminants than reported by MDE.

On May 23, 1995, appellee began to move soil from the stockpile to an earth berm as required by the subcontract with appellant. Appellee contends that it moved the soil in accordance with the instructions given by appellant, which were to continue to treat the soil as contaminated. Appellee was to be paid on a monthly basis by submitting estimates to appellant. William Shook testified that he was paid monthly for other work performed on the job, but not for work involving contaminated soils.

Appellee then demanded payment from appellant in accordance with the contingent rate for contaminated soils agreed upon in the contract amendment. As required by Article XIX of the subcontract, appellant demanded payment from the City at contingent rate for contaminated soils. Article XIX of the subcontract states:

The Sub–Contractor hereby agrees that in the event Sub–Contractor has any claim against Contractor which arises out of, relates to, or is based upon, in whole or in part, an act, omission, order, right or fault of the owner, then the Contractor, upon receipt of timely notice from Sub–Contractor, acting on behalf of the Sub–Contractor and at Sub–Contractor's expense, will present any such claim to the Owner [City of Frederick], and the Sub–Contractor shall accept in full payment and discharge of any such claim, such amount or relief, if any, as the Owner shall grant pursuant to the terms of the Principal Contract; and except as above provided, the Sub–Contractor hereby waives any rights it otherwise might have against the Contractor, and agrees never to look to the Contractor for payment on account of any such claim except to such extent, if any, as the Contractor may be paid by the owner on account of any such claim of the Sub–Contractor.

The City refused to pay, and appellant filed suit to recover payment from the City for appellee's work. Appellant was unsuccessful in obtaining payment from the City as part of the lawsuit because the court found appellant failed to obtain authorization from R.K. & K. and MDE prior to removing the contaminated soil, as required. Appellee then sued appellant

for payment for hauling the contaminated soil. Appellant defended that suit on the grounds that Article XIX of the subcontract prevents appellee from recovering payment because the City failed to pay appellant. In essence, appellant claimed that Article XIX is a condition precedent, relieving it of any obligation to pay appellee unless or until, appellant receives payment from the City.

In denying appellant's motion for summary judgment, the circuit court ruled:

> The court finds that the language in Article XIX does not establish a condition precedent. Therefore, whether the City's non-payment can be viewed as an act or omission is a moot point. A condition precedent is a "fact, other than a mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises." [*Gilbane Bldg. Co. v. Brisk Waterproofing Co., Inc.*, 86 Md.App. 21, 26, 585 A.2d 248 (1991)] (*citing* 17 Am.Jur.2d, Contracts § 320). "Whether a provision in a contract constitutes a condition precedent is a question of 'construction dependent on the intent of the parties to be gathered from the words they have employed and in case of ambiguity, after resort to the other permissible aids of interpretation.'" *New York Bronze Powder Co., Inc. v. Benjamin Acquisition Corp.*, 351 Md. 8, 14 n. 2, 716 A.2d 230 (1998) (*citing Chirichella v. Erwin*, 270 Md. 178, 182, 310 A.2d 555 (1973)).

*     *     *

In the instant case, Article XIX states that Shook is "never" to look to Kline for payment upon the occurrence of certain conditions. This provision does not contain the language typically associated with the creation of a condition precedent, including the words and phrases "when" "after" "as soon as" "subject to" "provided that" and "if". *Chirichella v. Erwin*, 270 Md. at 182, 310 A.2d 555. However, condition precedents can be created absent "special" language. In determining whether a particular agreement

makes an event a condition, the Court of Appeals in *Bronze* notes that courts will:

> interpret doubtful language as embodying a promise or constructive condition rather than an express condition. *This interpretative preference is especially strong when a finding of express condition would increase the risk of forfeiture by the obligee.*

*New York Bronze Powder Co., Inc.,* 351 Md. at 17, 716 A.2d 230.

The Court further comments:

> In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, *an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicated he has assumed the risk.*

*Id.* at 17 n. 5, 716 A.2d 230 (emphasis added).

Neither the Subcontract nor the Addendum clearly state which party had a duty to obtain the required authorization to remove and dispose of the contaminated waste. *See* Article 1, *supra,* and Addendum. Consequently, there is no indication that the City's non-payment was an event within Shook's control. There is also no indication that Shook assumed the risk of non-payment by the owner. *See New York Bronze Co., Inc., supra.* It is clear Shook intended to receive payment for the services it performed. Accordingly, this court declines to find that the language in Article XIX establishes a condition precedent to payment. Rather, this court finds that Article XIX constitutes a pay-when-paid provision, thus entitling [Appellee] to payment.

In conclusion, because the contract does not clearly state who was supposed to obtain authorization and because obligee Shook risks forfeiture, summary judgment is granted in favor of [Appellee] Shook Hauling & Excavating, Inc.

As previously noted, appellee prevailed at trial and appellant was ordered to pay appellee for work involving the handling of contaminated soil. This timely appeal followed.

■

## LEGAL ANALYSIS

### I. Motion for Summary Judgment

■ Appellant argues that the trial court erred in denying its motion for summary judgment and finding that Article XIX of the contract did not create a condition precedent. Article XIX of the subcontract, avers appellant, created a "paid if paid" provision which shifts the risk of nonpayment by the owner from the contractor to the subcontractor. The act of nonpayment by the City, it contends, barred any claims of appellee.

Summary judgment is proper when there is no genuine dispute of a material fact and the moving party is entitled to judgment as a matter of law. *See Prince George's County v. The Washington Post Co.*, 149 Md.App. 289, 304, 815 A.2d 859 (2003); *Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993). Therefore, in order to overturn a grant of summary judgment, appellant must show there exists "a genuine dispute as to a material fact." *Herrington v. Red Run Corp.*, 148 Md.App. 357, 361, 811 A.2d 894 (2002). An appellate court reviews the facts, and all inferences therefrom, in the light most favorable to the nonmoving party. *The Washington Post Co.*, 149 Md.App. at 304, 815 A.2d 859. When there is no dispute as to a material fact, we review the denial of the motion for summary judgment to determine if the trial court was legally correct. *See Beatty*, 330 Md. at 737, 625 A.2d 1005; *The Washington Post Co.*, 149 Md.App. at 305, 815 A.2d 859; *Heat and Power Corp. v. Air Products & Chemicals, Inc.*, 320 Md. 584, 592, 578 A.2d 1202 (1990). Generally, we "will consider only the grounds upon which the lower court relied in granting summary judgment." *The Washington Post Co.*, 149 Md.App. at 305, 815 A.2d 859 (citing *PaineWebber Inc. v. East*, 363 Md. 408, 422, 768 A.2d 1029 (2001)). We examine whether the court correctly interpreted and applied the relevant law to the uncontested material facts. *Id.*

■ Although the motions presented by appellant and appellee contained multiple issues, the trial court's decision

deals with one—whether Article XIX of the subcontract creates a condition precedent. In *Chirichella v. Erwin*, 270 Md. 178, 310 A.2d 555 (1973), the Court of Appeals defined a condition precedent as "a fact, other than a mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises." *Id.* at 182, 310 A.2d 555 (citing 17 Am.Jur.2d, *Contracts,* § 320). In determining whether Article XIX of the subcontract created a condition precedent, we examine the language of the contract. *Gilbane Building Co. v. Brisk Waterproofing Co., Inc.,* 86 Md.App. 21, 27, 585 A.2d 248 (1991). "The question whether a stipulation in a contract constitutes a condition precedent is one of construction, dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation." *Chirichella,* 270 Md. at 182, 310 A.2d 555 (citing 17A C.J.S., *Contracts,* § 388). In Maryland, the objective law of contracts is followed when interpreting the language of a contract. *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985). Therefore, when the language is clear and unambiguous "we must presume that the parties meant what they expressed," leaving no room for construction. *Id.*

Appellant argues that Article XIX unambiguously requires payment from the City as a condition precedent to its obligation to pay appellee. In other words, appellant is attempting to shift the risk of nonpayment from itself to appellee pursuant to this clause. In order to shift that risk, the contract should contain an express condition, clearly showing that to be the intent of the parties. *See Gilbane,* 86 Md.App. at 25, 585 A.2d 248 (quoting *Atlantic States Construction Co. v. Drummond & Co.,* 251 Md. 77, 82, 246 A.2d 251 (1968) (citations omitted)).

In *Gilbane,* we held that the unambiguous language of the subcontract established a condition precedent. 86 Md.App. at 28, 585 A.2d 248. In that case, the contract provided: *"It is specifically understood and agreed that the payment to the*

*trade contractor is dependent, as a condition precedent, upon the construction manager receiving contract payments[.]" Id.* at 25, 585 A.2d 248 (emphasis added). Although no particular language is required to create a condition precedent, words and phrases such as "if," "provided that," "when," "after," "as soon as" and "subject to," have commonly been associated with creating express conditions. *Gilbane,* 86 Md. App. at 26–27, 585 A.2d 248 (citations omitted).

Article XIX does not contain the language employed in *Gilbane,* nor does it contain language which unmistakably shows the intent of the parties to create a condition precedent. Upon examination of the language in Article XIX, we are persuaded that it does not clearly and unambiguously create a condition precedent. As the trial court determined in its opinion and order of December 20, 2002, Article XIX does not contain any of the language normally associated with the creation of a condition precedent. Where the language in the contract is doubtful, we will interpret the "language as embodying a promise or constructive condition rather than an express condition." *New York Bronze Powder Co., Inc. v. Benjamin Acquisition Corp.,* 351 Md. 8, 17, 716 A.2d 230 (1998) (citing *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.,* 86 N.Y.2d 685, 691, 636 N.Y.S.2d 734, 660 N.E.2d 415 (N.Y.1995)) (citations omitted). This interpretive preference "is especially strong when a finding of an express condition would increase the risk of forfeiture by the obligee." *Id.* Thus, we agree with the trial court that, if Article XIX creates a condition precedent, the likelihood of forfeiture by appellee is increased. Therefore, Article XIX is not a "pay when paid" provision, entitling appellee to payment. We hold that the court did not commit error in denying appellant's motion for summary judgment and finding Article XIX is a "pay when paid" provision.

## II. Pleadings

Appellant also complains that the trial court erred in rendering a judgment, which is outside the cause of action pled. The essence of this claim is that appellee's complaint

alleges breach of the subcontract and the amendment to that contract. The trial court, in its opinion and order of April 15, 2004, found that the parties orally modified the contract and the oral modification served as the basis for the court's finding of liability. The court stated: "Through such conduct and the resulting implication a new contract was entered into by the parties. Because of this new contract I find that R.F. Kline, Inc. is liable to Shook Excavating and Hauling for the work completed on this project." Appellant argues that the amended complaint, and attached subcontract filed by appellee, designated the subcontract as the basis for appellee's cause of action. Therefore, the subcontract should be the sole basis for appellee to recover.

Md. Rule 2–303(b) governs the contents of pleadings and states in pertinent part: "A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense." We have said that pleadings need not contain unnecessary evidence, but should contain "such statements of fact as may be necessary to show the pleader's entitlement to relief." *Fischer v. Longest*, 99 Md.App. 368, 380, 637 A.2d 517 (1994). The pleadings should state the subject matter of the claim "with such reasonable accuracy as will show what is at issue between the parties, so that, among other things, the defendant may be apprised of the nature of the complaint he is required to answer and defend." *Fletcher v. Havre De Grace Co.*, 229 Md. 196, 200, 177 A.2d 908 (1962); *see Gent v. Cole*, 38 Md. 110 (1873). The Rule, as well as the case law, require at a minimum that the pleadings contain facts showing that appellee is entitled to relief based on the oral modification of the contract.

Appellant cites *Housing Authority of College Park v. Macro Housing, Inc.*, 275 Md. 281, 340 A.2d 216 (1975) as dispositive of this issue. That case involved a contract dispute in which the parties contracted to build housing for the elderly. *Id.* at 283, 340 A.2d 216. The dispute arose out of the parties' failure to delete a provision in the contract, which they had

agreed to delete prior to the final writing, releasing appellee from its obligations to provide certain appliances. *Id.* at 283–84, 340 A.2d 216. Appellee attempted to admit the parol evidence, tending to support its allegation that the contract was erroneously written. *Id.* at 284, 340 A.2d 216. Appellant first responded to appellee's attempt to admit the evidence by demurrer, which was overruled, and then by objection during trial. *Id.* The trial court admitted the extrinsic evidence of the prior agreement and appellee was awarded monetary damages. *Id.*

The Court of Appeals reversed, concluding that the pleadings were insufficient because appellee claimed, as the basis of the litigation, the breach of the written agreement. *Id.* The Court determined that parol evidence was inadmissible to show that the written agreement did not express the understanding of the parties. *Id.* at 284–85, 340 A.2d 216. In an attempt to overcome the parol evidence issue, appellee urged that a new or subsequent contract was entered into by the parties, which varied the terms of the original contract by deleting the erroneous provision. *Id.* at 285, 340 A.2d 216. While the Court recognized the ability of the parties to enter into a new or subsequent agreement, the basis for appellee's claim was the prior agreement, not a new or subsequent contract. *Id.* The Court cited *Hoke v. Wood,* 26 Md. 453 (1867), in holding: "The plaintiffs having failed to prove the contract as set out in the nar., . . . could not insist upon their right to recover under the declaration for the brach [sic] of another and different contract." *Id.* at 286, 340 A.2d 216.

Here, however, the pleadings do present sufficient facts, such that appellant is aware of what claims it is required to defend. The complaint alleged that the subcontract and the amendment to the contract required appellee "to perform its work at the direction of appellant and in accordance with the written specifications incorporated in the contract." The complaint also alleges that, "[t]hrough the course of its work, [appellee] remained in contact with and sought the approval of [appellant] and the engineer for the [City]." The answer to the amended complaint states, "[appellant] denies . . . that the

Subcontract required [appellee] to perform its work under the general supervision of the contractor." The answer continues, "[appellant] admits that the subcontract and amendment thereto required appellee to perform its work at the direction of [appellant] and in accordance with the written specifications of the contract." It cannot now be claimed by appellant that the complaint failed to provide sufficient facts to determine what is at issue.

The parties here dispute who controlled appellee's work. Appellant has maintained throughout that appellee was bound by the terms of the subcontract and general contract to take its direction from the City and its engineers on the project. Appellee has claimed throughout that appellant controlled the work performed by it on the job site. The trial court's opinion concerning the oral modification related specifically to the issue of which party controlled appellee's work on the job site. In *Housing Authority of College Park*, the appellee attempted to introduce a subsequent agreement, which had not been pled as the basis for the claim. That case is clearly different from the case at hand. The parties have disputed the issue of control in this case and, at some point, the court would be required to decide the issue. The mere fact that appellee did not set out a separate averment, claiming there was an oral modification, is not enough to overcome the fact that the parties disputed this point in the amended complaint and answer to the amended complaint.

### III. Oral Modification to the Contract

Appellant next argues that the trial court erred in finding that the subcontract had been orally modified. Parties to a contract may waive the requirements of the contract by subsequent oral agreement or conduct, notwithstanding any provision in the contract that modifications must be in writing. *Hoffman v. Glock*, 20 Md.App. 284, 288, 315 A.2d 551 (1974); *see Freeman v. Stanbern Const. Co.*, 205 Md. 71, 79, 106 A.2d 50 (1954). If a provision in the contract requires modifications to be in writing, it must be shown, either by express agreement or by implication, that the parties understood that

provision was to be waived. *Freeman*, 205 Md. at 79, 106 A.2d 50. Subsequent oral modification of a written agreement may be established by a preponderance of the evidence. *Id.* "Whether or not the subsequent conduct of the parties amounts to a waiver is a question of fact to be decided by the trier of fact." *Hoffman*, 20 Md.App. at 289, 315 A.2d 551 (citing *Bartlett v. Stanchfield*, 148 Mass. 394, 395, 19 N.E. 549 (1889)).

Appellant claims that facts adduced at trial and during discovery demonstrate that the parties never orally modified the subcontract. The trial court, however, was persuaded that there were sufficient facts to find the parties orally modified the agreement. We agree. In its opinion and ruling, the court stated:

> [I]n this case there was mutual consent between R.F. Kline, Inc. and Shook Excavating and Hauling, Inc. to orally modify their written contract. Particularly persuasive is the testimony of both Bill Shook, the owner of Shook Excavating and Hauling, and John Rushing, vice president from R.F. Kline, Inc., who was in charge of the project in question. Both men testified that throughout the period that Kline sub [sic], subcontracted to Shook, a Kline foreman at a job site would consistently administer verbal orders to Shook and his crew. Mr. Shook, that is, Bill Shook, testified that when he had questions about a project he went directly to either John Rushing, John Rushing or Jim Snyder, the superintendent of the project. Mr. Shook further stated that he was not ever told to get written instruction and that during the entire course of the project he had only received two letters specifically about the handing [sic], handling of contaminated soils. Specifically, July 15th, '93 and August 11th, '94. According to Mr. Shook, the remainder of the communication between the parties about Shook's performance of the job site had always been done in verbal form.
>
> John Rushing, who had been employed by R.F. Kline, Inc. from 1987 until May of 1988(sic), 1998, testified about the chain of command followed throughout the project. As

stated by Mr. Rushing, Bill Shook worked for Kline, and Shook only took instruction from Kline. Rushing further testified that either he or Jim Snyder would instruct Shook about where to take contaminated soils, when to remove the UST's and to, whether or not to keep the soils separated.

When questioned about the authority, the Maryland Department of the Environment or the engineers from Rummel, Klepper, & Kahn Construction management, Mr. Rushing reiterated that those agencies instructed R.F. Kline and instructed Bill Shook. On Cross examine [sic] when asked specifically about Article 3 of the subcontract Mr. Rushing insisted we never operated that way. No sub ever took instructions from every—from any other than R.F. Kline.

The trial court's opinion demonstrates there were significant facts presented to conclude there was an oral modification to the subcontract. Article III of the subcontract stated "It is understood and agreed by and between the parties hereto that the work included in this Sub–Contract is to be done under the direction of said Architect and/or Engineer or Owner." The facts clearly demonstrate that whatever this clause in the subcontract was intended to mean, it is not what occurred between the parties while operating on the job site.

Appellant, however, contends that sufficient consideration did not exist for the modification. The compromise and mutual agreement of the parties to vary the terms and enter into a new contract constitute sufficient consideration to support the agreement. *Freeman*, 205 Md. at 78, 106 A.2d 50. Furthermore, the trial court determined there was sufficient consideration through the testimony of John Rushing, appellant's former vice president and appellee. Appellee testified that Rushing instructed him to keep working and said, "don't worry about [payment for your bills on contaminated soils]. If you don't get paid monthly, you'll get paid at the end of the job." Rushing corroborated appellee's testimony by stating that he "[t]old [appellee] not to worry about it. . . . That we'll, everyone will get paid in the final analysis." This exchange between the parties indicates there was a well-understood

meaning and that it was the same in the minds of both parties. *See Furness–Withy & Co. v. Fahey,* 127 Md. 333, 96 A. 619 (1915). The trial court stated: "It is unreasonable to assume that [appellee] ever anticipated that he would not be financially compensated for his labor." We hold the oral modification was proven by a preponderance of the evidence, sufficient consideration exists to support the oral modification of the contract, and by their conduct, the parties knowingly waived the clause in the contract requiring all modifications to be in writing.

## IV. Liquidated Damages

Notwithstanding the fact that nowhere in the record is there any indication the trial court determined Article XIX was not a liquidated damages clause, we are of the opinion that it is not. Our recent decision in *Smelkinson Sysco v. Harrell,* 162 Md.App. 437, 875 A.2d 188 (2005), explains that the term " 'liquidated damages' means a specific sum of money . . . expressly stipulated by the parties to a . . . contract as the amount of damages to be recovered by either party for a breach of agreement." *Id.* at 447, 875 A.2d 188 (citing *Traylor v. Grafton,* 273 Md. 649, 661, 332 A.2d 651 (1975)). Courts look to three factors as defining characteristics of a liquidated damages clause:

(1) clear and unambiguous language providing for "a certain sum";

(2) stipulated damages that represent reasonable compensation for the damages anticipated from the breach, measured prospectively at the time of the contract rather than in hindsight at the time of the breach;

(3) a "mandatory binding agreement[ ] before the fact which may not be altered to correspond to actual damages determined after the fact."

*Id.* at 448, 875 A.2d 188.

Article XIX does not exhibit any of the three characteristics we have identified. The language of Article XIX does not provide for "a certain sum." Instead, it merely provides that

appellee "shall accept in full payment ... such amount or relief ... as the Owner shall grant." This language necessarily defers to the City's determination as to the amount of damages to be received and in no way identifies a "certain sum" to be paid in the event of a breach. The clause fails to measure the damages prospectively, and instead allows the Owner to determine the measure of damages at the time of the breach. The clause also can be modified to correspond to the actual damages determined by the "Owner" following the breach. In fact, Article XIX is more akin to a traditional method of measuring the actual damages which ensue following a breach. Therefore, we hold Article XIX is not a liquidated damages provision.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**