515 So.2d 250 (1987)
DYSER PLUMBING Company and Insurance Company of North America, Appellants,
v.
ROSS PLUMBING AND HEATING, INC., Appellee.
No. 86-3221.
District Court of Appeal of Florida, Second District.
September 4, 1987.
Rehearing Denied November 9, 1987.
*251 Stevan T. Northcutt, of Levine, Hirsch, Segall, Northcutt & Hanlon, P.A., Tampa, for appellants.
Raymond C. Conklin, of Stolba, Englander, Conklin, Brainard, DiSano & Verona, P.A., St. Petersburg, for appellee.
RYDER, Judge.
This dispute arose from the parties' involvement in constructing an addition to St. Anthony's Hospital in Pinellas County. Appellant Dyser Plumbing was engaged by the owner to install the plumbing, medical gas and fire protection systems in the addition. Dyser subcontracted with three companies: appellee Ross Plumbing, Hobgood Air Conditioning and Brown Automatic Sprinklers. Appellant INA was the surety on Dyser's performance and payment bonds.
The project experienced substantial delays. When the project was five months behind, Dyser requested delay damage estimates from its subcontractors. When the project became eleven months behind, Dyser mathematically projected everyone's five-month delay estimates to eleven months and submitted the total to the owner. The $1,136,799.00 claim included estimated eleven-month delay damages for Dyser and all three subcontractors. The amount submitted as Ross' delay damages estimate was $108,130.00. After some negotiations with the owner, Dyser and the owner agreed to a settlement of the delay damages claim of $175,000.00. The amount was not allocated by the owner.
Dyser and the other two subcontractors agreed on an amount to settle their delay damages, Dyser paid them the agreed-upon sum, and those subcontractors signed a release. Ross and Dyser attempted to negotiate a settlement, but could not come to an agreement.
Ross then sued Dyser and INA for breach of contract and requested delay damages, the balance of the payments held as retainage and attorney's fees and costs. Dyser's answer included affirmative defenses which admitted a retainage was owed to Ross, but that the retainage was not, in fact, due and payable because the retainage had not been received by Dyser from the owner. The answer also included a counterclaim for defective and/or improperly performed work.
A bench trial was held in which the trial court limited the evidence of the settlement negotiations between Dyser and Ross. The trial court limited the evidence relating to negotiations because it decided no settlement had been reached. Dyser argued unsuccessfully that a settlement between Dyser and Ross had been reached, so evidence of it was admissible. In its final judgment, the trial court found that the delays were not caused by either party and that both parties had suffered delay damages. It also found that some of Ross' work was performed incorrectly and the cost of conforming the work  $17,600.00  would be a set-off against Ross' recovery. The trial court found "the delay damages submitted by Ross were accurate and that the delay claim itself was legitimate," and that Dyser had negotiated a settlement of the delay damages claim with the owner "without first having negotiated a settlement agreement with Ross and without first being authorized to settle for Ross." It then found that "the retainage monies of $49,197.00 have been, and are due." The *252 trial court's order awarded Ross its total delay damage claim of $108,130.00 minus the $17,600.00 set-off, plus the retainage of $49,197.00, for a total of $139,727.00. It ordered prejudgment interest from March 25, 1985. A subsequent order awarded to Ross costs and attorney's fees. This appeal is from those orders.
Dyser raises three points on appeal. The first point contains three subparts. We address the points seriatim. The first point argues that the evidence is insufficient to support a judgment in Ross' favor as to (a) a breach of contract, (b) the amount of delay damages, and (c) prejudgment interest. Ross claimed at trial that Dyser breached the contract in not paying to Ross its retainage when a reasonable time had passed after completion of the project. Ross argued that the owner's payment is not a condition precedent to the contractor's obligation to pay a subcontractor, citing Peacock Construction Co., Inc. v. Modern Air Conditioning, Inc., 339 So.2d 294, 295 (Fla. 2d DCA 1976) [Peacock I]. Dyser argued that payment of the retainage by the owner was an express contractual condition precedent to Dyser's obligation to pay Ross' retainage. Paragraph 5.(e) of the contract between Dyser and Ross provides:
Final payment, inclusive of retention, shall be made within thirty days of completion of the construction project, acceptance of the same by the Owner, and as a condition precedent, receipt of final payment of Dyser Plumbing and Mechanical from the Owner or Prime Contractor, as the case may be.
The supreme court, in affirming Peacock I, stated:
Our decision to require judicial interpretation of ambiguous provisions for final payment in subcontracts in favor of subcontractors should not be regarded as anti-general contractor. It is simply a recognition that this is the fairest way to deal with the problem. There is nothing in this opinion, however, to prevent parties to these contracts from shifting the risk of payment failure by the owner to the subcontractor. But in order to make such a shift the contract must unambiguously express that intention. And the burden of clear expression is on the general contractor.
Peacock Construction Co., Inc. v. Modern Air Conditioning, Inc., 353 So.2d 840, 842-43 (Fla. 1977). In reading the contract clause above, it is hard to imagine a more clear expression of an intent to shift the risk of payment failure by the owner to the subcontractor.
The owner's final payment to Dyser was a condition precedent to Dyser's obligation to pay Ross' retainage. The evidence at trial was insufficient to prove the condition precedent had been met. Dyser claims that at the time of trial, Dyser had yet to be paid by the owner. The record does not indicate whether Dyser has, in fact, been paid by the owner. We reverse and remand the case with the following instructions. If the trial court determines that Dyser has been paid the final payment by the owner, the trial court can leave the retainage award undisturbed. If the trial court determines that Dyser has yet to be paid the final payment by the owner, the retainage award must be vacated and set aside.
The second subpart of Dyser's first point on appeal challenges the sufficiency of the evidence in support of the delay damages award. Paragraph 4.(b) of the contract provides, in pertinent part:
Should the Subcontractor's performance of this subcontract be delayed by any acts of Dyser Plumbing and Mechanical, its subcontractors or suppliers, or delayed by any acts or causes which entitle Dyser Plumbing and Mechanical to an extension of time under the Agreement, the Subcontractor shall receive an equitable extension of time for the performance of this subcontract (not to exceed that received by Dyser Plumbing and Mechanical from the Owner or Prime Contractor, as the case may be), but shall not be entitled to any increase in the subcontract price or to damages or additional compensation as a consequence of such delays, unless the Owner is liable and pays for such delays. Dyser *253 Plumbing and Mechanical will pay the Subcontractor the amount allowed and paid by the Owner for the Subcontractor's delay. [Emphasis supplied.]
Paragraph 7, titled DISPUTES, begins by stating that any claims by the subcontractor must be timely made to Dyser in order to enable Dyser to present the claim to the owner. The balance of paragraph 7 states:
Dyser Plumbing and Mechanical will not be liable to the Subcontractor on account of any claims not timely or properly presented nor unless and until it is allowed by the Owner or Prime Contractor, as the case may be, and then only to such extent as is allowed by the Owner or Prime Contractor. Notwithstanding anything to the contrary contained herein, no interruption, cessation, postponement or delay in the commencement of the work or in the progress thereof from any cause whatsoever, including disputes, shall relieve the Subcontractor of its duty to timely perform or give rise to any right to damages or additional compensation from Dyser Plumbing and Mechanical except to the extent that reimbursement is received from the Owner or Prime Contractor by Dyser Plumbing and Mechanical therefor with respect to the work performed by Subcontractor hereunder, and the Subcontractor hereby expressly waives and releases any other or further right to damages or additional compensation.
The above contractual language is clear in stating that the subcontractor has no right to delay damages "unless the owner is liable and pays for such delays." Dyser is liable to Ross only to the extent allowed by and received from the owner. The owner allowed and paid $175,000.00 on a claim of over one million dollars.
The percentage of the $175,000.00 received by the other two subcontractors was roughly the same as their percentage of the total claim. Ross wanted $108,000.00 of the $175,000.00, and the trial court gave Ross exactly that. The trial court's finding that Dyser did not have the authority to settle for Ross was apparently the basis for finding Dyser liable for Ross' full delay damage claim. The trial court erred in finding Dyser liable for the full claim. The contract expressly stated Dyser was not liable to Ross except to the extent allowed and paid by the owner. The $175,000.00 allowed and paid by the owner was unallocated. The payment apparently was not conditioned upon receiving a release from the subcontractors (although Dyser's payment of the agreed-upon sums to the other two subcontractors was conditioned upon their signing of a release). Absent an agreement between Dyser and Ross (which the court specifically found was not present), absent a specific allocation by the owner and absent Dyser being responsible for the delay (again, something the trial court specifically found was not present), Dyser was not liable to Ross for delay damages. We reverse and vacate the trial court's award to Ross of $108,130.00. Ross may be able to successfully pursue the owner or the entity causing Ross' delays; but under the terms of the contract, Dyser is the "wrong guy."
The third subpart under Dyser's first point on appeal is the trial court's award of prejudgment interest from March 25, 1985. Because we held above that final payment by the owner was a condition precedent to Dyser's obligation to pay Ross and we reversed the award of delay damages, we reverse and vacate the trial court's award of prejudgment interest.
Dyser's second point on appeal argues that the trial court erred in excluding evidence as to a settlement agreement between Dyser and Ross and that the trial court erred in denying a motion for new trial. We find no error in the trial court's rulings on these matters. Accordingly, we affirm as to this point.
Dyser's last point on appeal is that if the judgment in favor of Ross is reversed or reduced, the trial court's award of attorney's fees and costs to Ross must, correspondingly, be reversed or reduced. We agree. If the trial court's determination upon remand is that Dyser is now liable to Ross for the retainage, as discussed above, then the attorney's fees and *254 costs must be reduced appropriately. If the condition precedent has yet to be met, the attorney's fees and costs award must be reversed and vacated, as Dyser would become the prevailing party.
Affirmed in part; reversed in part and remanded with instructions.
SCHEB, A.C.J. and SCHOONOVER, J., concur.