562 So.2d 800 (1990)
BENTLEY CONSTRUCTION DEVELOPMENT & ENGINEERING INC., and Peerless Insurance Company, Appellants,
v.
ALL PHASE ELECTRIC & MAINTENANCE, INC., Appellee.
No. 89-01644.
District Court of Appeal of Florida, Second District.
May 30, 1990.
*801 Lee H. Rightmyer of Baynard, Harrell, Mascara & Ostow, St. Petersburg, for appellants.
Andrew White, III, of Patton, Boggs & Blow, Tampa, for appellee.
*802 DANAHY, Acting Chief Judge.
The appellants (the contractor and its surety) appeal a final judgment entered by the trial court against them and in favor of the appellee (the subcontractor) following a nonjury trial. We affirm in part and reverse in part.
For purposes of our analysis, we separate the determinations in the final judgment into three categories. In the first category are the principal amounts found by the trial court to be due or not due as between the parties. The trial court found in paragraph 2 of the final judgment that the contractor failed to sustain its burden of proof that the subcontractor delayed the construction project, so that the contractor was not entitled to any setoff for delay damages. The trial court further found in paragraph 3 that the subcontractor was entitled to the sum of $1,387, and in paragraph 4 the trial court found that the subcontractor was entitled to recover the sum of $1,703 from the contractor. The contractor contests an item of $720 included in the latter award.
The determinations in this first category rest on conflicting evidence, which it is the duty of the trier of fact to reconcile. Our concern on appeal is whether there was substantial and competent evidence to support the trial court's findings. Tsavaris v. NCNB Nat'l Bank, 497 So.2d 1338 (Fla. 2d DCA 1986). We conclude that there was and, therefore, affirm the determinations which we have placed in this first category.
The final judgment awards prejudgment interest to the subcontractor, constituting the second category of determinations made by the trial court. The disagreement between the parties here concerns the date from which prejudgment interest should be computed. That date is the date on which the contractor was obligated under the terms of the subcontract to make final payment to the subcontractor. The contractor takes the position that the payment provision in the subcontract made the contractor's obligation to pay the subcontractor subject to payment by the owner to the contractor; in other words, that the subcontract shifted to the subcontractor the risk of nonpayment or delayed payment by the owner to the contractor. The trial court ruled that the subcontract provision did not have this effect and we agree. The provision in question reads as follows:
Subcontractor shall be entitled to receive all progress payments and the final payment within ten working days after contractor receives payment for such from the owner, except as otherwise provided in the conditions.
Recently, the Florida Supreme Court reviewed the subject of when payment provisions in subcontracts have the effect of risk-shifting and when they do not. DEC Electric, Inc. v. Raphael Construction Corp., 558 So.2d 427 (Fla. 1990). In that case the court did not recede from any prior expressions by the court on this subject, nor did it disapprove any decisions of the district courts of appeal construing subcontract payment provisions. The opinion of the court relies on and reinforces the 1977 decision of the court in Peacock Construction Co. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla. 1977). The court said that Peacock clearly holds that risk-shifting provisions are susceptible to only two possible interpretations. If a provision is clear and unambiguous, it is interpreted as setting a condition precedent to the general contractor's obligation to pay. If a provision is ambiguous, it is interpreted as fixing a reasonable time for the contractor to pay. In purported risk-shifting provisions between a contractor and subcontractor, the burden of clear expression is on the general contractor. The court quoted its language from Peacock that the intent of the parties in most cases is that payment by the owner to the general contractor is not a condition precedent to the general contractor's duty to pay the subcontractors. This is because small subcontractors, who must have payment for their work in order to remain in business, will not ordinarily assume the risk of the owner's failure to pay, or delay in paying, the general contractor.
Comparing the language of the payment provision in this case to language which *803 Florida courts have found to be ambiguous, and to language which Florida courts have found to be unambiguous, we approve the holding of the trial court in this case that the payment provision in the contract between the parties is ambiguous. See Peacock (final payment to subcontractors to be made "within thirty days after the completion of the work included in this subcontract, written acceptance by the architect and full payment therefor by the owner"; found ambiguous); Snead Construction Corp. v. Langerman, 369 So.2d 591 (Fla. 1st DCA 1978) (no payments to be made "until" the contractor is paid by the owner; provision found to be ambiguous and construed in favor of subcontractor); DEC Electric, Inc. ("[n]o funds will be owed to the subcontractor unless the General Contractor is paid by the owner in accordance to the sworn statement. The subcontractor fully understands that in event of non payment by the owner to the General Contractor, the subcontractor has legal recourse against the owner ..."; provision found to be unambiguous); Robert F. Wilson, Inc. v. Post-Tensioned Structures, Inc., 522 So.2d 79 (Fla. 3d DCA 1988) ("final payment is contingent upon payment to the contractor"; held unambiguous); Dyser Plumbing Co. v. Ross Plumbing & Heating, Inc., 515 So.2d 250 (Fla. 2d DCA 1987) ("[f]inal payment ... shall be made within thirty days of completion of the construction project, acceptance of the same by the Owner, and as a condition precedent, receipt of final payment... from the Owner"; provision found to be unambiguous).
Accordingly, with one exception discussed below, the sums due from the contractor to the subcontractor in this case were due within a reasonable time after the completion of the subcontractor's work. The subcontractor has conceded that ninety days is a reasonable time. Therefore, all prejudgment interest should be computed from that date, which is April 1, 1987. We reverse the final judgment in this case to the extent that it provides for prejudgment interest to commence at a prior date.
Further, we reverse the ruling of the trial court that all retainage held by the contractor was required to be paid to the subcontractor within a reasonable time after the subcontractor's completion. The subcontract specifically and unambiguously provides that the contractor could hold five percent of retainage until final payment is received by the contractor from the owner. This provision precedes the general payment provision quoted earlier in this opinion. Accordingly, prejudgment interest should be computed on the retainage of $13,650 only, rather than the total retainage of $24,000 as provided in the final judgment. We reverse the final judgment on this point.
Finally, the third category consists of the trial court's award of attorney's fees and costs in the total amount of $12,540. The disagreement here concerns the fact that the sum of $1,387 awarded to the subcontractor constitutes a billing transferred by the subcontractor at the contractor's request from another project to the construction project involved here. The contractor's surety argues that it should not be responsible for so much of the attorney's fees and costs as are attributable to the $1,387 item, since the surety had no responsibility for that item. We agree. We reverse the award of attorney's fees and costs with directions that the trial court make an appropriate allocation of fees and costs between work done on the item of $1,387 and all of the other items involved in this litigation and that the trial court relieve the surety of responsibility for the sum allocated to the $1,387 item.
Affirmed in part, reversed in part, and remanded with directions.
ALTENBERND, J., concurs specially with an opinion, in which HALL, J., concurs.
ALTENBERND, Judge, specially concurring.
If I were writing on a clean slate, I would find the payment condition in this subcontract unambiguous and I would enforce it. Without unnecessary words or complicated legal terminology, condition A-1 of this subcontract entitles the subcontractor *804 "to receive" payments "within ten working days after contractor receives payment for such from the owner, except as otherwise provided in the conditions." No one argues that any other provision in the conditions creates any exception. On the question of when payment is due, this condition is subject to only one interpretation: after the contractor receives payment from the owner. If ambiguity exists only in the presence of two or more reasonable interpretations of a writing, this condition is not ambiguous. Although this provision might be ambiguous concerning the risk of nonpayment from the owner, it clearly places the risk of delayed payment upon the subcontractor. See DEC Elec., Inc. v. Raphael Constr. Corp., 558 So.2d 427 (Fla. 1990).
I concur because established precedent now seems to require this type of contract to contain a statement that payment by the owner is a "condition precedent," a statement that payment is "contingent upon payment to the contractor," or some comparable emphatic statement before the clause will be deemed sufficiently clear to permit judicial enforcement. Peacock Constr. Co. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla. 1977); Dyser Plumbing Co. v. Ross Plumbing & Heating, Inc., 515 So.2d 250 (Fla. 2d DCA 1987); Robert F. Wilson, Inc. v. Post-Tensioned Structures, Inc., 522 So.2d 79 (Fla. 3d DCA 1988). Although it may be a good idea to limit enforcement of such construction contracts to contracts which contain a conspicuous, emphasized statement shifting the risk of delayed payment from the contractor to the subcontractor, I think that regulation should come from the legislature. This is particularly true when the owner is a governmental entity.
If a thought is clearly expressed in plain English in a written agreement between two parties, the courts should not disregard that thought, and they should enforce the contract as written unless it violates a legislative enactment or a clear public policy. This contract violates neither. In this case and in the earlier cases, we simply require emphasis or conspicuity in the name of ambiguity. I am willing to enforce this precedent and to encourage lawyers to write such clauses with emphasis and conspicuity, but I cannot state that I find this contractual provision ambiguous.
HALL, J., concurs.