585 A.2d 248

**GILBANE BUILDING COMPANY**

v.

**BRISK WATERPROOFING COMPANY, INC.**

**No. 552, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Feb. 4, 1991.

John A. Wolf, Baltimore (Michael P. Darrow and Kathryn L. Taylor, Annapolis, on the brief), for appellant.

Richard C. Whiteford, Baltimore (Michael L. Thomas and Thompson & Waldron, Alexandria, Va., on the brief), for appellee.

Argued before MOYLAN, BLOOM and ROBERT M. BELL, JJ.

BLOOM, Judge.

In an action by Brisk Waterproofing Company, Inc. (Brisk) against Gilbane Building Company (Gilbane) for work done by Brisk as a subcontractor of Gilbane, the general contractor, the Circuit Court for Prince George's County entered summary judgment in favor of Brisk, from which Gilbane has taken this appeal. Brisk cross-appealed from the denial of pre-judgment interest.

We agree with Gilbane's contention that the court erred as a matter of law in granting Brisk's motion for summary

judgment; accordingly, we shall reverse the judgment, thus rendering the cross-appeal moot.

## Facts

The facts of this case, as set forth in the parties' agreed statement of the case, submitted in lieu of the record pursuant to Md.Rule 8–413(b), may be summarized as follows.

Carley Capital Group was the owner of a project in Baltimore City known as "Henderson's Wharf." The project was designed to convert warehouses in the Fells Point area of the city into residential condominiums. On 4 September 1987, Carley and Gilbane executed a construction contract wherein Gilbane agreed to act as Carley's construction manager and general contractor for the project. Shortly thereafter, Gilbane and Brisk executed two subcontracts wherein Brisk agreed to perform certain masonry work on the project for a total price of $1,989,058.

Brisk received periodic payments from Gilbane as the work progressed. By August, 1988, Brisk had satisfactorily performed all of its obligations under both subcontracts and requested final payment of the outstanding balance of $283,079. Gilbane refused to tender the final payment on the ground that it had not received payment from Carley Capital Group. Brisk subsequently established a mechanic's lien against the property; however, in December 1988 the holder of a third deed of trust on the property foreclosed. Since the resulting foreclosure sale failed to yield any surplus to satisfy the mechanic's lien, the lien was extinguished.

On 10 March 1989, Carley Capital Group was forced into a Chapter 7 bankruptcy, which was subsequently converted to a Chapter 11 proceeding on 9 April 1989. Thereafter, Brisk filed this action against Gilbane in the Circuit Court for Prince George's County, seeking payment of the $283,079 due on the subcontracts plus prejudgment interest of 10% per annum from the date of the Carley bankruptcy.

The case was submitted on an agreed statement of facts. After considering the cross-motions for summary judgment filed by the parties, the court granted Brisk's motion for summary judgment in the amount of $283,079 but denied its request for prejudgment interest.

## Discussion

When ruling on a motion for summary judgment, the trial court must consider whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and whether the moving party is entitled to judgment as a matter of law. Md.Rule 2–501(e). *See also, Syme v. Marks Rentals, Inc.*, 70 Md.App. 235, 238, 520 A.2d 1110 (1987). Since submission of the case on an agreed statement of facts precludes any dispute between the parties as to any material fact, our scope of review is limited to whether the trial court was correct in awarding judgment to Brisk as a matter of law. *Department of Environment v. Showell*, 316 Md. 259, 267–68, 558 A.2d 391 (1989); *City of Baltimore v. Fid. & Dep. Co.*, 282 Md. 431, 446, 386 A.2d 749 (1978); *Brewer v. Mele*, 267 Md. 437, 441, 298 A.2d 156 (1972).

Gilbane contends that both subcontracts clearly establish that its receipt of payment from the owner, Carley Capital Group, is a condition precedent to its obligation to pay Brisk. The subcontracts provide, in pertinent part, as follows:

3.2 On the established day of each month, the trade contractor [Brisk] shall deliver to the construction manager [Gilbane], a detailed, quadruplicate statement acceptable to the construction manager, and if required, supported by receipts, vouchers, etc. showing values of all materials delivered and work completed up to the established billing date for which payment is requested. Monthly and final payments will be made to the trade contractor within five (5) days after receipt of payment by the construction manager from the owner. The retained

percentage will be forwarded as soon as received by the construction manager from the owner. *It is specifically understood and agreed that the payment to the trade contractor is dependent, as a condition precedent, upon the construction manager receiving contract payments, including retainer from the owner.* (Emphasis added.)

Brisk, on the other hand, contends, and the trial court agreed, that the above language constitutes merely a "pay when paid" clause, which postpones the time for payment until the happening of a certain event *or for a reasonable period of time* if such event does not occur, rather than a condition precedent to the obligation to pay. In holding that the subcontracts do not address the prospect of owner insolvency, the trial court stated,

> I conclude the clause does not exempt insolvency, that that is such an extraordinary condition that has a direct bearing on payment, that in order for it to act as a bar to recovery by the subcontractor it has to be specifically mentioned by the parties. It is not in this case.

In support of the trial court's ruling that the subcontracts did not shift the risk of owner insolvency from Gilbane, Brisk relies on *Atlantic States Constr. Co. v. Drummond & Company, Inc.*, 251 Md. 77, 246 A.2d 251 (1968). In *Atlantic*, the Court of Appeals observed that

> "Normally and legally, the insolvency of the owner will not defeat the claim of the subcontractor against the general contractor. Accordingly, in order to transfer this normal credit risk incurred by the general contractor to the subcontractor, the contract between the general contractor and subcontractor should contain an express condition clearly showing that to be the intention of the parties."

251 Md. at 82, 246 A.2d 251, quoting *Thos. J. Dyer Co. v. Bishop Int'l Eng. Co.*, 303 F.2d 655, 661 (6th Cir.1962). The Court stated that the above passage "is an acceptable amplification of what we have thus far indicated the law of this State is or ought to be." 251 Md. at 83, 246 A.2d 251.

The contract at issue in *Atlantic,* however, provided only that final payment would be made "within 30 days after the completion of the work included in this Subcontract, ... and FULL PAYMENT therefor by the Owner." *Id.* at 79, 246 A.2d 251. There was no language in the contract that clearly established a condition precedent, such as in the case *sub judice.* The same distinction can be made regarding a similar holding in *Eastern Heavy Constructors, Inc. v. Fox,* 231 Md. 15, 19, 188 A.2d 286 (1963), upon which Brisk also relies.

Although the parties stipulated that the subject of owner insolvency was never discussed during the contract negotiations, courts are not at liberty to ignore the clear and unambiguous language of a contract. In *Chirichella v. Erwin,* 270 Md. 178, 182, 310 A.2d 555 (1973), the Court of Appeals stated:

A condition precedent has been defined as "a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises," 17 Am.Jur.2d, *Contracts* § 320. Similar definitions may be found in *Bergman v. Parker,* 216 A.2d 581, 583 (D.C.App.1966); *In Re Roberts' Estate,* 190 Kan. 248, 373 P.2d 165, 171 (1962); Corbin, *Conditions in the Law of Contract,* 28 Yale L.J. 739, 747 (1919); 1 Restatement of Contracts, § 250 (1932); and 3A Corbin, *Contracts,* § 628 (1960). The question whether a stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation, 17A C.J.S. *Contracts,* § 338; *see United States v. Schaeffer,* 319 F.2d 907, 911 (9th Cir.1963), *cert. denied,* 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767 (1964). Although no particular form of words is necessary in order to create an express condition, such words and phrases as "if" and "provided that," are commonly used to indicate that performance has expressly been made conditional, *Beattie–Firth, Inc. v.*

*Colebank,* 143 W.Va. 740, 105 S.E.2d 5, 8–9 (1958), 74 A.L.R.2d 431; 17 Am.Jur.2d, *Contracts,* § 320; as have the words "when," "after," "as soon as" or "subject to," *id.;* 5 Williston, *Contracts,* § 671 (Jaeger Ed.1961). *See also Canaras v. Lift Truck Services, Inc.,* 272 Md. 337, 353, 322 A.2d 866 (1974); *Baltimore County v. Archway Motors,* 35 Md.App. 158, 162, 370 A.2d 113 (1977).

■ When interpreting the unambiguous language of a contract, courts must consider the objective meaning of the terms employed by the parties. In *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985), the Court of Appeals observed that Maryland follows the objective law of contracts, which the Court explained as follows:

> [W]hen the language of a contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean.

*See also Creamer v. Helferstay,* 294 Md. 107, 127, 448 A.2d 332 (1982); *Kasten Construction Co., Inc. v. Rod Enterprises, Inc.,* 268 Md. 318, 328–29, 301 A.2d 12 (1973); *P.V. Properties, Inc. v. Rock Creek Village,* 77 Md.App. 77, 83, 549 A.2d 403 (1988); *Stueber v. Arrowhead Farm Estates,* 69 Md.App. 775, 780, 519 A.2d 816 (1987).

The Court further noted, in *Goldberg v. Goldberg,* 290 Md. 204, 212, 428 A.2d 469 (1981), that contracts in Maryland

> are subject to interpretation in light of the settled and oft-repeated principles of objective construction. *Orkin v. Jacobson,* 274 Md. 124, 128, 332 A.2d 901, 903 (1975). "The written language embodying the terms of an agree-

ment will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding . . . ." *Slice v. Carozza Prop., Inc.*, 215 Md. 357, 368, 137 A.2d 687, 693 (1958). "[W]here a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed." *Kasten Constr. v. Rod Enterprises*, 268 Md. 318, 328, 301 A.2d 12, 18 (1973); *Little v. First Federated Life*, 267 Md. 1, 6, 296 A.2d 372, 375 (1972); *Devereux v. Berger*, 253 Md. 264, 269, 252 A.2d 469, 471 (1969).

*See also Benson v. Board of Ed. of Montgomery County*, 280 Md. 338, 349, 373 A.2d 926 (1977).

■ With the foregoing in mind, we hold that the unambiguous language of ¶ 3.2 of the subcontracts unquestionably establishes a condition precedent. In addition to providing a standard "pay when paid" clause, as discussed in *Atlantic* and *Eastern*, the contracts *sub judice* further provide that payment by Carley Capital Group to Gilbane is a *condition precedent* to Gilbane's obligation to pay Brisk. Regardless of whether the parties discussed the prospect of owner insolvency during their negotiations, the objective meaning of ¶ 3.2 is clear—Gilbane, the construction manager (general contractor) is not obligated to pay Brisk, the trade contractor (subcontractor), unless and until Gilbane is paid by the owner, Carley Capital Group.

The trial court apparently construed *Atlantic* as requiring that a subcontract make an express reference to insolvency of the owner in order to shift from the general contractor to the subcontractor the risk of non-payment caused by such insolvency. That construction is too narrow. A provision that makes receipt of payment by the general contractor a condition precedent to its obligation to pay the subcontractor transfers from the general contractor to the subcontractor the credit risk of non-payment by the owner for *any* reason (at least for any reason other than

the general contractor's own fault), including insolvency of the owner.

The precise language of ¶ 3.2 has not heretofore been interpreted by the appellate courts of this State. Gilbane refers us to *Dyser Plumbing Company v. Ross Plumbing and Heating, Inc.,* 515 So.2d 250 (Fla.App. 2 Dist.1987), in which the intermediate appellate court of Florida construed language quite similar to ¶ 3.2 as establishing a condition precedent to the contractor's obligation to pay the subcontractor. The Florida court observed, "In reading the contract clause above, it is hard to imagine a more clear expression of an intent to shift the risk of payment failure by the owner to the subcontractor." 515 So.2d at 252. We believe the same can be said of the language at issue in the case *sub judice.*

Since the insolvency of the project owner rendered impossible the satisfaction of the condition precedent, Gilbane was not obligated to tender final payment to Brisk pursuant to the subcontracts. Consequently, the circuit court erred in awarding summary judgment to Brisk. Our decision to reverse the judgment of the circuit court renders unnecessary a consideration of Brisk's cross-appeal concerning the propriety of the court's denial of prejudgment interest.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEE/CROSS–APPELLANT, BRISK WATERPROOFING COMPANY, INC.