REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 226

September Term, 2014

_____

YOUNG ELECTRICAL CONTRACTORS, INC.,

v.

DUSTIN CONSTRUCTION, INC.

_____

Eyler, Deborah S.,
Reed,
Salmon, James P.,
 (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Reed, J.

_____

Filed:  December 28, 2016

Appellant, Young Electrical Contractors, Inc. ("Young"), entered into a subcontractor agreement with appellee, Dustin Construction, Inc. ("Dustin") to perform all required electrical work for a prime contract Dustin entered into with George Mason University in Virginia. Due to a number of delays in the project, Young was unable to meet the agreed-upon date for substantial completion of the work. As a result, Young experienced a number of cost overruns and sought payment for those overages via a number of change requests. When Young did not receive those payments from the university via Dustin, Young sued Dustin in the Circuit Court for Montgomery County for breach of the subcontract.

Dustin's defense of the suit centered on the subcontract's "pay-when-paid" clauses, a set of clauses that provided Young would be paid when Dustin received payment from the university. The circuit court agreed with Dustin and granted summary judgment on Young's breach of contract claim, explaining that, under the pay-when-paid clauses, Dustin was not liable to Young for the change requests because George Mason had not yet paid Dustin for those amounts.

We are asked to review the trial court's grant of summary judgment to Dustin. Appellant poses four questions for our consideration, which we have consolidated and rephrased in three questions below:[1]

---

[1] Appellant originally presented the following two questions in its brief:

I.  Whether the circuit court erred in its determination of the validity of the "pay-when-paid" clauses of the parties' agreement;

II.  Whether the circuit court erred where it determined the "pay-when-paid" clauses applied to the present dispute;

III.  Whether the circuit court erred where it did not find a genuine dispute of material fact that the changes to the project were owner-initiated.

We hold the circuit court committed no error in finding the pay-when-paid clauses

applied to the present dispute, which allowed for the entry of summary judgment on the

I.  Did the lower court err when it entered its summary judgment in favor of a defendant general contractor pursuant to a "pay-when-paid" clause, prior to any discovery in the case, in reliance on the wrong "pay-when-paid" language of the subcontract?

II.  If appellate review were not limited to the reasons relied upon in the lower court, and the lower court had applied the potentially applicable "pay-when-paid" language advanced by the defendant general contractor in its Motion for Summary Judgment, was summary judgment precluded by material factual disputes over whether all of the claims underlying Plaintiff's breach of contract action were limited to owner-initiated changes?

III.  If appellate review were not limited to the reasons relied upon by the lower court, did the prevention doctrine preclude the entry of summary judgment prior to the opportunity for discovery in the case on the basis that the general contractor did not make the administrative procedure for disputes available to the subcontractor?

IV.  Did the lower court err when it interpreted the "pay-when-paid" clause as equivalent to a "paid-if-paid" clause?

2

breach of contract claim in favor of Dustin. Accordingly, we affirm the judgment of the circuit court and shall explain.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Young Electrical Contractors, Inc., is an electrical contracting firm based in Laurel, Maryland, which specializes in the installation of electrical equipment for construction projects. Appellee, Dustin Construction, Inc., is a construction firm based in Ijamsville, Maryland, and is primarily engaged in the construction industry as a general contractor.

George Mason University ("George Mason" or "Owner"), is a public university located in Fairfax County, Virginia. George Mason sought to renovate and construct an addition to Building Two of its Student Union (the "Project"). Dustin bid on and was

---

[2] On August 11, 2016, the appellee (Dustin Construction) filed a Suggestion of Bankruptcy with this Court, arguing that the present appeal should be stayed pursuant to 11 U.S.C. § 362 based on a pending involuntary bankruptcy case against the appellant (Young Electrical) that was filed in the United States Bankruptcy Court for the District of Maryland on October 23, 2014, by certain alleged, non-party creditors.

On August 19, 2016, the appellant filed a Motion to Strike and/or Disregard the Suggestion of Bankruptcy filed by the Appellee. Among other things, the appellant asserts that "the statute providing for an automatic stay following the filing of a bankruptcy petition [(11 U.S.C. § 362)] applies only to actions 'against the debtor.'" Because the present case involves an action brought *by* the bankruptcy debtor, not *against* it, the appellant contends that an automatic stay would be improper.

Upon consideration of 11 U.S.C. § 362 and the relevant case law, we agree with the appellant's argument that the automatic stay does not apply because this case does not involve an action against the bankruptcy debtor. Moreover, Dustin did not argue that because of the bankruptcy filing, the right to assert Young's claims belongs to a bankruptcy trustee rather than to Young itself. *See Morton v. Schlotzhauer*, 449 Md. 217, 224 (2016). Therefore, we hereby grant the appellant's Motion to Strike the Suggestion of Bankruptcy filed by the Appellee.

awarded the contract for the Project as general contractor. Dustin and George Mason executed this contract (the "Prime Contract") on or about July 20, 2010. Needing a subcontractor for the electrical work required under the Prime Contract, Dustin entered into a subcontract with Young on or about October 15, 2010 (the "Subcontract") for this work.

Per George Mason's Notice to Proceed, work on the Project commenced on July 30, 2010. Although the Prime Contract set November 15, 2010, as the date for substantial completion of the Project, the Notice to Proceed extended the substantial completion date to November 30, 2010. Young, however, achieved substantial completion on March 8, 2011—more than three months after the date set by George Mason.

The delays in completion of the work prompted Young to submit three Change Requests; two of those three requests—Nos. 1066 and 1067—are at issue in this appeal.[3] Young submitted Change Request No. 1066 to Dustin on September 14, 2011, which sought $259,034.99 for "extended overhead costs associated with [George Mason]'s extension of the contract." Dustin then submitted Change Request No. 1066 along with its own delay claim to George Mason on November 16, 2012. Per George Mason's request, Dustin separated Change Request No. 1066 from its own claim, and also reduced the amount requested in No. 1066 to $180,010.21. That amount reflected the removal of costs that were not covered under the Subcontract. No. 1066 was then resubmitted to George Mason on March 4, 2013.

---

[3] The first of the three change requests, No. 1046, was resolved on February 5, 2014, when Dustin paid Young the requested amount of $23,843.00.

About a year-and-a-half later, on February 15, 2013, Young submitted Change Request No. 1067, which sought $274,812.33 because of "owner initiated . . . design changes, design errors, unforeseen conditions and additions/deletions of the work originally required." Young explained that it experienced an "overrun of hours" because it was "forced to accelerate the electrical activities by adding additional manpower, supervision, tools, equipment, overtime and shift work."

Young filed its Complaint in the Circuit Court for Montgomery County on September 3, 2013, alleging a single count of breach of contract against Dustin.[4] The complaint alleged that Young was not responsible for the three month delay in achieving substantial completion of its work. It further alleged that, because of the delays to the Project, it had to work overtime and, as a result, incurred additional costs. Young contended that it submitted its claims arising from the additional work, but that Dustin failed to provide Young with any information or documentation demonstrating that Young's claims

---

[4] The subcontract provides a mechanism by which Young could have gone after the Owner for the additional payment. That mechanism, which is delineated in Section 27 of the subcontract and, by incorporation, Section 47 of the general contract, is to first have the general contractor submit a claim to the Owner for the Owner's approval. Then, if the Owner has denied the subcontractor's claim (which the general contractor would have brought on its behalf), the subcontractor can take legal action against the Owner as permitted under Section 47 of the general contract. Unfortunately for Young, the first sentence of the third paragraph of Section 47 reads: "The decision of the agency head or other signatory on the Contract shall be final and conclusive unless the Contractor within six (6) months of the date of the final decision on a claim, initiates legal action as provided in § 2.2-4364 of the Code of Virginia." (Emphasis added). Thus, Young could have gone after the Owner within six months of the final decision on its claim, but instead chose to pursue an action against the general contractor.

were submitted to George Mason. Young further contended that Dustin failed to process its claims, and that Dustin had not paid and pursued Young's claims against George Mason. Young alleged that Dustin committed a breach of contract where it directed Young to perform the additional overtime work, but failed and refused to pay for that work and its associated costs.

George Mason denied both Change Request No. 1066 and Change Request No. 1067 on September 17, 2013. These requests implicated the "pay-when-paid" provisions of the Subcontract, which explained that Young's payment was contingent upon, as a condition precedent, Dustin's receipt of payment from George Mason. Because George Mason denied both Change Requests, Dustin was not paid the requested amounts and, in turn, pursuant to the pay-when-paid provisions, Dustin did not pay Young its requested amounts.

Dustin filed its Answer to the Complaint, along with a motion for summary judgment (the "Motion"), on October 21, 2013. The Motion argued, among other things, that Dustin was not liable to Young for the requested amounts because of the pay-when-paid provisions of the Subcontract.

The circuit court heard the parties on the Motion on January 22, 2014, and delivered its oral opinion on February 11, 2014. The court explained that its review of the record demonstrated that Dustin had, in fact, submitted both Change Requests to George Mason. In addition, the court held that summary judgment was appropriate because George Mason refused both of the requests and did not pay Dustin, making the pay-when-paid provision of the Subcontract applicable to the present dispute.

6

The circuit court entered summary judgment by Order dated February 18, 2014. Young moved the court for reconsideration on February 21, 2014, but the court denied the motion on April 7, 2014.

Young timely noted its appeal on April 11, 2014.

### DISCUSSION

### *(i) Validity of Pay-When-Paid Clauses*

### A. Parties' Contentions

Young argues that the circuit court misinterpreted the Subcontract to grant summary judgment in favor of Dustin. It explains that the court cabined its analysis solely within Section 2(c) of the Subcontract, which, it claims, applies only to amounts found due and owing and not to disputed claims as in the present case. The circuit court's interpretation of the contract, Young contends, ignores other applicable paragraphs, including but not limited to Sections 13(d), 27, 28, and 39, in contravention of principles of contract interpretation.

Dustin responds that there are several provisions within the Subcontract that would act to bar Young's claim. Specifically, Sections 2(c), 13(c), and 27(f) each contain a condition precedent that requires payment from George Mason before Young is paid. Therefore, according to Dustin, because each of these three potentially applicable Sections contains the same condition precedent, Young's claim under the Subcontract is barred.

### B. Standard of Review

The interpretation of written contractual terms is a question of law we review *de novo*. *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008). Unlike

7

the factual determinations of a circuit court, its legal determinations are not afforded deference on appeal. *Thomas v. Capital Med. Mgmt. Assocs., LLC*, 189 Md. App. 439, 453 (2009). Such legal determinations, *i.e.*, determination based on Maryland statutory or case law, are reviewed *de novo* for legal correctness. *See id.* at 454.

Maryland courts apply an objective interpretation of contracts. *Id.* If the terms of a contract are unambiguous, the plain meaning of the agreement will prevail and the court will not consider the parties' subjective intent at the time of formation. *Id.* If a reasonably prudent person finds that the contract is susceptible of more than one meaning, the court will determine the contract is ambiguous. *Id.* The terms of the contract are interpreted in context, each of them interpreted together with contract's other provisions. *Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co.*, 380 Md. 285, 301 (2004) (*Ulico*); *Jones v. Hubbard*, 356 Md. 513, 534–35 (1999). We give the terms of the contract their customary, ordinary, and accepted meaning. *See Ulico*, 380 Md. at 301.

### C. Analysis

The pay-when-paid clauses in the Subcontract are valid contractual provisions, and we will consider their applicability in turn. We note initially that the present dispute is governed by Virginia law per the choice of law provision in Section 31 of the Subcontract.

In Virginia, as in Maryland, issues of contract interpretation are reviewed *de novo*. *Bailey v. Loudoun Cnty. Sheriff's Office*, 762 S.E.2d 763, 766 (Va. 2014); *accord Ocean Petroleum, Co., Inc. v. Yanek*, 416 Md. 74, 86 (2010).

The seminal case on pay-when-paid clauses is a 1962 opinion of the U.S. Court of Appeals for the Sixth Circuit. In *Thos. J. Dyer Co. v. Bishop International Engineering*

8

*Co.*, 303 F.2d 655 (6th Cir. 1962), the Sixth Circuit considered the enforceability of a pay-when-paid clause in a subcontracting agreement. In the ordinary course, a general contractor assumes a degree of credit risk related to the owner's solvency, and there exist protections against this risk that a general contractor may employ, *e.g.*, mechanic's liens or installment payments. *See id.* at 660. The subcontractor need not incur that credit risk unless the parties agree to it. *See id.* at 660–61. The Sixth Circuit explained that, in order for that risk to be shifted from the general contractor to the subcontractor, the parties must agree to an express condition in their subcontract that demonstrates their intent. *Id.* at 661. That Court ultimately held that the pay-when-paid provision at issue did not shift the credit risk to the subcontractor, and that the language of the provision afforded the general contractor a period of time to receive payment from the owner in order to pay the subcontractor. *See id.*

The Supreme Court of Virginia first considered pay-when-paid clauses and the associated defense in *Galloway Corp. v. S.B. Ballard Construction Co.*, 464 S.E.2d 349 (Va. 1995). The Court held that pay-when-paid clauses will be upheld as valid if the contract "on its face reasonably contemplates eventual payment by the general contractor to the subcontractor" or the parties clearly intended that a condition precedent be fulfilled before the general contractor pays the subcontractor. *Id.* at 501.

To reach its holding on conditions precedent, the *Galloway* Court relied on our opinion in *Gilbane Building Co. v. Brisk Waterproofing Co., Inc.*, 86 Md. App. 21 (1991). There, we held that for a valid condition precedent to exist within a pay-when-paid clause, courts will look to the unambiguous language of the contract to see whether such a

9

condition is established. *See id.* at 27–28. We explained that the inclusion of conditions precedent in a subcontracting agreement involves a shift in the credit risk from the general contractor to subcontractor:

> A provision that makes receipt of payment by the general contractor a condition precedent to its obligation to pay the subcontractor transfers from the general contractor to the subcontractor the credit risk of non-payment by the owner for *any* reason (at least for any reason other than the general contractor's own fault), including insolvency of the owner.

*Id.* at 28–29 (emphasis in original). This shift in risk accordingly demands an express reference in the subcontract to a condition precedent. *See id.* (explaining that *Atlantic States Constr. Co. v. Drummond & Co., Inc.*, 251 Md. 77, 81–84 (1968) (*Drummond*) and its consideration of the *Dyer* opinion is construed to require a subcontract to make an express reference to a condition precedent, regardless of reason for the condition, as long as subcontractor understands there is a shift in credit risk). We determined the condition precedent in the parties' contract was unambiguous and allowed for the objective interpretation that the subcontractor would not receive payment from the general contractor "unless and until" the owner paid the general contractor. *Id.* at 28.

Section 2(c) is a valid pay-when-paid clause under Virginia law, as it comports with the *Galloway* Court's acceptance of our holding in *Gilbane*. Section 2(c) is the subsection of the "Payments to Subcontractor" section that is relevant to this dispute. Section 2 sets forth the understandings between the parties and the procedures for Dustin's payments to Young for the electrical work under the Subcontract. The clause in Section 2(c) states, in relevant part:

10

> It is specifically understood and agreed that the Contractor's obligation to pay all or any portion of the Subcontract Sum to Subcontractor, whether as a progress payment, retainage, or a final payment, *is contingent, as a condition precedent*, upon the contractor's receipt of payment from the Owner of all amounts due Contractor on account of the portion of the Work for which the Subcontractor is seeking payment.

(Emphasis added).

The Subcontract explicitly establishes that George Mason's payment to Dustin is the condition precedent to Dustin's payment of Young. This contract language is virtually the same as the language in *Gilbane* that we found to constitute a valid condition precedent within a pay-when-paid clause. *Id.* at 25, 28. (holding that the following language established a condition precedent to the subcontractor's payment: "It is specifically understood and agreed that the payment to the trade contractor *is dependent, as a condition precedent*, upon the construction manager receiving contract payments, including retainer from the owner." (emphasis added)). The *Galloway* Court accepted our reasoning on conditions precedent, which permits us to determine that Section 2(c) is a valid pay-when-paid clause under Virginia law. *See Galloway*, 464 S.E.2d at 354 ("If . . . as in *Gilbane*, the parties clearly intend there to be a condition precedent fulfilled before payment comes due, the contract will be construed as written . . . .").

Section 13(c) is most relevant to the present dispute, as it addresses payments arising from owner-initiated changes. That subsection provides, in relevant part:

> In the event a change is made to this Contract as a result of the Owner's change to the Prime Contract and such change causes an increase or decrease in the cost of and/or the time required for performance under this Subcontract, Subcontractor may submit to Contractor in writing in accordance with the

11

requirements of the Changes Clause of the General Contract a request for an equitable adjustment in the Subcontract Sum and/or the Subcontract Time, or both . . . . Contractor shall pay to Subcontractor *that amount paid by the Owner to Contractor* on account of any such change to this Subcontract, less any markup and other amounts due Contractor on account of such change. *Contractor shall have no liability to Subcontractor on account of any such Owner initiated change except for such amount, if any*.

(Emphasis added).

Section 13(c) is similar to the pay-when-paid provision in *Dyer* in that it does not contain an express condition precedent, but rather simply explains that Dustin "shall pay" to Young the amount Young incurred because of an Owner-initiated change. Dustin is made liable to Young only for the change amounts that Young requested from George Mason and that George Mason paid. There is no timeframe, however, attached to Dustin's payment of Young under this clause. *See Gilbane*, 86 Md. App. at 25 (explaining that, without an express condition, a pay-when-paid clause "postpones the time for payment until the happening of a certain event or for a reasonable period of time if such event does not occur."). Also, there is no apparent shift in the credit risk arising from this Section because of the lack of express conditional language. Accordingly, Section 13(c) by itself operates as a standard pay-when-paid clause because of the lack of conditional language. *See id. at* 25–26 (citing *Drummond*, 251 Md. at 79, 82–83 for proposition that for standard pay-when-paid clause to shift normal credit risk and provide for payment at specific time or occurrence, there must be an express condition in the clause).

We cannot, however, review Section 13(c) in isolation. *See Ulico*, 380 Md. at 301 (explaining that the terms of the contract are interpreted in context, with each of them

12

interpreted together with contract's other provisions). To do so would ignore the effect of Section 2(c), which is a payments clause of general applicability. Although Section 13(c) does not contain an express condition precedent, it does contemplate payments to Young where George Mason has initiated a change in the Project. As Section 2(c) sets forth the procedure for payments to Young, its applicability to 13(c) should not be ignored. Accordingly, when both sections are read together, Dustin's receipt of a change payment from George Mason is the condition precedent that must be met if Young is to receive that payment. By consenting to Section 2(c), Young has accepted the credit risk and cannot hold Dustin liable for non-payment if it does not receive its change payment. *See Gilbane*, 86 Md. App. at 28–29.

Because the *Galloway* Court adopted the reasoning of the *Dyer* court, we think that *Dyer*'s reasoning is applicable to the present case. *See Galloway,* 464 S.E.2d at 353–54. Section 13(c) is enforceable as a pay-when-paid clause subject to a condition precedent in Section 2(c) because Young agreed, by operation of Section 2(c), that all payments were subject to the condition of George Mason's payment of Dustin. Read together, Young agrees to the shift in credit risk when it seeks payment arising from change orders.

Section 27(f) is similar to Section 13(c) insofar as it contemplates payments arising from certain scenarios. Section 27 applies to the resolution of disputes involving George Mason, and subsection (f) places limits on Dustin's liability to Young for Owner-involved disputes. Section 27(f) provides:

> Contractor shall have no liability to Subcontractor on account of any claim, suit or appeal arising under or relating to the Prime Contract, or the Owner's conduct thereunder *except that*

13

> *recovered by Contractor from the Owner on Subcontractor's*
> *behalf, if any*, less any markups and other amounts due
> Contractor on account of such claim, suit or appeal.

(Emphasis added).

This clause makes clear that Young cannot sue Dustin directly for any issues related to the Prime Contract or George Mason's conduct under that agreement. Under this provision, Dustin is liable to Young *only* where Dustin has recovered an amount under this Section of the Subcontract *on Young's behalf*. Section 27(f) operates like Section 13(c) in that it limits Dustin's exposure to Young to only certain amounts and claims. Without such an Owner-involved claim for which Dustin has already recovered from George Mason, Young cannot lodge a separate claim against Dustin. Section 27(f) is, therefore, a pay-when-paid clause in that it contemplates a valid claim against Dustin only where Dustin has received payment from George Mason. There is no conditional language here, but like Section 13(c), it must be read in tandem with Section 2(c). Because 2(c) <u>does</u> contain an express condition on payments to Young, it will apply to those claims Young makes against George Mason via Section 27(f). Where Section 27(f) creates a "remedy" for Young against George Mason, Section 2(c) provides the procedure for Young's payment for a valid claim under 27(f).

### *(ii) Applicability of Pay-When-Paid Clauses*

### A. Parties' Contentions

Young further argues that the circuit court erred in applying Section 2(c) of the Subcontract to dismiss its claim. It explains that Section 2(c) was not relied on by either of the parties and that Dustin chose to rely on Section 13(c) in support of its Motion. Young

14

further explains that the differences between the Sections are critical because they each apply to distinct sections. It contends that Section 13(c)—rather than Section 2(c)—is the provision appropriate to the present scenario because it concerns changes to the Subcontract.

Dustin contends that Sections 2(c), 13(c), and 27(f) are each applicable to the present case and each serve to bar Young's claim. Dustin argues that Section 2(c)'s pay-when-paid provision applies because 2(c) governs the payment of "all or any portion of the Subcontract Sum," which is what Young's Change Requests sought. It further argues that Section 13(c) applies because that section of the Subcontract governs owner-initiated changes, which were at issue here. Last, Dustin argues that Section 27(f) is potentially applicable because that provision governs claims arising from a dispute. If Young's claims are characterized as arising from a dispute, Dustin explains, then the pay-when-paid provision of Section 27(f) should apply.

### B. Standard of Review

A party may seek summary judgment on all or part of an action, provided there is no genuine dispute as to any material fact and that party is entitled to judgment as a matter of law. Md. Rule 2-501(a). Whether the trial court properly granted summary judgment is a question of law. *Boland v. Boland*, 423 Md. 296, 366 (2011) (internal quotation marks and citations omitted). Accordingly, we conduct a *de novo* review of the trial court's grant of summary judgment. *Id.* We engage in an independent review of the record to determine whether there existed a genuine dispute of material fact and, if not, whether judgment as a matter of law was appropriate. *Id.* The record is reviewed in the light most favorable to the

15

non-moving party, and any reasonable inferences drawn from the facts are construed against the moving party. *Id.*

### C. Analysis

The circuit court properly granted summary judgment on Young's claims to the amounts owed for the Change Requests. Sections 2(c), 13(c), and 27(f) of the Subcontract are each applicable to the instant dispute. Because Dustin received no payments from George Mason for the Change Requests, Dustin was unable to pay Young under any applicable Section of the Subcontract.

Section 37 of the Prime Contract provides the requirements and procedures for payments made by Dustin to subcontractors or suppliers. In relevant part, Section 37(a) provides:

> [T]he Contractor is obligated to:
>
> (a) Within seven (7) days *after receipt of amounts paid to the Contractor by the Owner* for Work performed by the Subcontractor or Supplier under this Contract,
>
> > (1) *Pay the Subcontractor or Supplier* for the proportionate share of *the total payment received from the Owner* attributable to the Work performed by the Subcontractor or the materials furnished by the Supplier under this contract . . . .

(Emphasis added).

This section of the Prime Contract clearly envisions a conditional pay-when-paid scheme for all subcontractor or supplier payments by George Mason. Although we do not require certain language to create a condition precedent in a contract, "words and phrases such as 'if,' 'provided that,' 'when,' 'after,' 'as soon as' and 'subject to'" are often

16

associated with the establishment of conditions. *Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.*, 165 Md. App. 262, 274 (2005). Section 37(a) sets forth a discrete time period in which payments must be made to the subcontractor or supplier, and the condition is denoted by the word "after," indicating that Dustin's receipt of payment is the applicable condition. Furthermore, Section 37(b) contemplates an incentive scheme to encourage prompt payments to a subcontractor <u>when</u> the Owner has paid Dustin. That section requires Dustin to pay interest to a subcontractor for any payment made more than seven days after receipt of payment from George Mason. These provisions demonstrate a clear intent of the parties to the Prime Contract to pay subcontractors *upon* Dustin's receipt of payment from George Mason. *See Kline*, 165 Md. App. at 273 ("[W]hen the language is clear and unambiguous we must presume that the parties meant what they expressed, leaving no room for construction." (internal quotation marks omitted)); *see also Gilbane*, 86 Md. App. at 25 (pay-when-paid clauses postpone time for payment "until the happening of a certain event or for a reasonable period of time."). This intent is underscored by the fact that there is no language in Section 37 that Dustin may pay a subcontractor at any point, regardless of whether it receives payment from George Mason or not.

Section 2(c) establishes a pay-when-paid clause with a condition precedent that is applicable to all subcontractor payments. Nevertheless, we need not conduct an examination of the relevant clause within Section 2(c) for conditional language because, as explained in section (i).C of our discussion *supra,* that part of the Subcontract expressly mentioned payment by George Mason to Dustin as a condition precedent to Dustin's payment of Young. This makes clear Section 2(c)'s objective meaning—that Dustin is

17

under no obligation to pay Young until Dustin receives payment from George Mason. *See Gilbane*, 86 Md. App. at 28 (holding that unambiguous language in subcontractor agreement established condition precedent indicating general contractor was not obligated to pay subcontractor until general contractor received payment from owner).

The placement of this language near the beginning of the agreement is additionally persuasive. Section 2 immediately follows the description of the scope of the agreement and the work to be performed, and the Section's title is general in nature. Section 2 does not provide payment instructions for any specific factual scenarios. Rather, by virtue of its placement in the agreement and non-specific language, we think that Section 2 contemplates general applicability to performance of the Subcontract. Accordingly, because George Mason did not pay Dustin for the Change Requests, it is impossible for Dustin to follow the letter of the agreement. It did not receive the money from George Mason, which is the necessary condition precedent in Section 2(c). Therefore, the circuit court's grant of summary judgment was entirely appropriate.

The general applicability of Section 2(c) to the agreement means that it applies to the scenarios encompassed by Sections 13 and 27. Section 13 sets forth the parties' understanding regarding changes to the scope and progress of the work. Specifically, Section 13(c) discusses Owner-initiated changes and explains that, as long as Young follows the procedure for seeking an equitable adjustment for Owner-initiated changes, George Mason will pay Dustin that adjusted sum and Dustin will, in turn, pay Young the requested amount. Although Section 13(c) does not possess an explicit reference to conditions precedent, the subsection's language makes clear the procedure envisioned for

18

the payment of change requests. Dustin and Young agreed that "[Dustin] shall pay to [Young] *that amount paid by [George Mason] to [Dustin]* on account of any such change to this Subcontract[.]" (emphasis added). Reading just that clause in isolation, we think it difficult to envision a payment scheme under this subsection where Young would receive payment from Dustin *regardless* of whether Dustin received payment from George Mason. The clause's language conveys a temporal sequence where Dustin will pay Young *once it receives* payment from George Mason.

Nevertheless, the general payment procedure in Section 2(c) applies to the change payment procedure in Section 13(c) because we must construe contractual provisions in such a way that no part of the agreement is rendered meaningless. *Ulico*, 380 Md. at 301; *see also DIRECTV, Inc. v. Mattingly*, 376 Md. 302, 320 (2003). The temporal sequence for payments arising from Owner-initiated changes in Section 13(c) mirrors the general payment procedure in Section 2(c)—change payments must be made to Dustin by George Mason before the former can pay Young for that same amount. Without any change payments received from George Mason, Dustin could not pay Young per their agreed-upon payment arrangement. To hold Dustin liable to Young for the Change Requests absent any payment from George Mason would contravene the parties' contractual intent and render the pay-when-paid clauses meaningless.

Section 27(f) of the Subcontract operates as a pay-when-paid clause only to the extent that Young has a claim against George Mason arising from the latter's conduct under the Prime Contract. Section 47 of the Prime Contract, entitled "Contractual Disputes," explains that claims under that agreement include either money or other relief. Per Section

19

27(b), Young's claims against George Mason entail monetary claims. Therefore, whether Section 27(f) operates as a pay-when-paid clause depends on whether Young's claims are considered Owner-involved disputes.

We think the claims to Change Requests 1066 and 1067 are indeed Owner-involved disputes. Both of the Change Requests cite George Mason's changes as the cause for submission of the requests. It is George Mason's denial of the Change Requests, however, that is at the heart of the present dispute. Young's claims are ultimately against George Mason. As stated *supra*, Section 27(f) limits Dustin's exposure to those amounts it recovers on behalf of Young for Owner-involved claims. The circuit court made findings that Dustin had indeed submitted the Change Requests to George Mason. Dustin followed the requisite procedures and is not liable for George Mason's declination of the Change Requests. Section 27(f) states that Dustin will only be liable to Young for amounts *recovered* from George Mason in any Owner-involved dispute. Without that recovery, however, Young cannot seek payment from Dustin in those amounts.

We hold that summary judgment was appropriate in this case. Sections 2(c), 13(c), and 27(f) operate to preclude Young's recovery of the Change Request amounts from Dustin because they are pay-when-paid clauses subject to an enforceable condition precedent of payment from George Mason to Dustin. Without satisfaction of this condition, Young is unable to hold Dustin liable for those amounts.

### (iii) Existence of Factual Dispute Regarding Owner-Initiated Changes

### A. Parties' Contentions

Young contends that there were several factual disputes preventing the entry of summary judgment. It argues that there was a genuine dispute as to whether the Change Requests were the product of Owner-initiated changes. Young considers the characterization of the changes as an attempt to rely on the pay-when-paid language in Section 13(c). It contends that it disputed this characterization of the changes and, accordingly, summary judgment was not appropriate.

Dustin argues that Young attempts to construct an alternate theory of events from allegations in the Complaint and statements made by its counsel. Dustin contends that in so doing, however, Young has not met its burden of production to demonstrate that there was a dispute of fact, necessitating our reversal of the grant of summary judgment. Dustin argues the evidence and affidavits it submitted supported the grant of summary judgment and, furthermore, the Change Requests themselves demonstrate Young stated that the claims were the result of owner-initiated actions.

### B. Standard of Review

As discussed in section (ii).B *supra*, we review the trial court's record to discern whether there was a genuine dispute of material fact that would preclude the entry of summary judgment. We shall review the record in a light most favorable to the non-moving party and shall construe any reasonable inferences from the facts against the moving party.

21

## C. Analysis

Young's contention that the Change Requests were not the product of Owner-initiated changes does not comport with the record in this case. The body of evidence presented to the circuit court cannot support a factual dispute that would preclude the operation of the pay-when-paid clauses.

The Change Requests were the result of Owner-initiated changes, which Young fully recognized. Young explains in Change Request 1066 that its request for additional payment was for "extended overhead costs associated with the *owner's extension of the contract.*" In Change Request 1067, Young provides an extended narrative regarding its request for additional payment. Young attributed the overrun in hours to "unforeseen problems and design related issues" as well as "numerous *owner initiated changes* which were issued that redesigned the work as the project proceeded." (emphasis added).

Nowhere else in the record is it demonstrated with any degree of persuasion that Dustin was responsible for the overages. Young's Change Requests remain the best explanation of the change orders. Young, therefore, is unable to demonstrate that there exists a genuine factual dispute as to whether the change orders were not owner-initiated.

It was undisputed that the Change Requests were the result of Owner-initiated changes. As a result, Sections 2(c), 13(c), and 27(f) operate to bar Young's claims against Dustin. All costs Young incurred were the result of Owner-initiated changes, and the

Subcontract requires Young to seek payment for these claims from George Mason via Dustin. Dustin is not liable to Young for the Change Requests.

**APPELLANT'S MOTION TO STRIKE SUGGESTION OF BANKRUPTCY GRANTED. JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**